# W. H. TWINE VS. MOLLIE CAREY.

1. A rule of the secretary of the interior, which requires a contestant before townsite trustees, appointed under act of May 14, 1890, to deposit thirty-two dollars with the treasurer of the board before a cause will be heard, is authorized by the law, is a reasonable rule, and a contestant or claimant failing to comply with the rule cannot invoke the aid of a court of equity.

2. Jurisdiction is the power to hear and determine the subject matter in controversy between parties to a suit; to adjust or exercise any judicial power over them.

3. A court of equity has no power to hear and determine any question affecting the title to public lands until the land département has determined the matter, and the title has passed from the government. But after the title has passed to private parties, a court of equity will convert the holder òf the legal title into a trustee to the true owner, if in equity and good conscience, and by the laws of congress and rules of the department thereunder, it ought to have gone to another.

4. One claiming the aid of a court of equity to set aside the finding of townsite trustees, must allege every fact that is necessary to prove to entitle him to a conveyance in the first instance, and must show that he was defeated by the misapplication of the law or the fraud, mistake or misconduct of his adversary, and he can not plead his own laches, misfortune or neglect as an excuse for failure to comply with the law.

5. Townsite trustees, appointed under act of May 14, 1890, bear the the same relation to the disposition of town lots that registers and receivers do to the disposal of public lands, and their decisions on questions of fact are conclusive and will not be inquired into, except on appeal to the proper departmental officers. A court of equity will only interfere to prevent injustice from being done, after final judgment, by reason of fraud, accident, mistake or misapplication of the law. .

6. Objection to the jurisdiction of the court which goes to the power of the court over the subject matter may be raised at any stage of the proceedings.

7. A court of equity has no jurisdiction when it is apparent from the petition that the plaintiff had a remedy at law and failed to avail him-

self of it, and shows no good excuse for such failure, and wherein it also appears that he was not entitled to the relief prayed for.

*Error from Logan County.*

*Keaton & Cotteral,* for plaintiff in error.

*H. R. Thurston,* for defendant in error.

The opinion of the court was delivered by

BURFORD. J.:   This was a suit in equity brought by Mollie Carey, the defendant in error, to charge W. H. Twine, the plaintiff in error, as trustee of certain real estate situated in East Guthrie, Oklahoma, and to compel a conveyance to her.   The district court found for the plaintiff and directed that a conveyance of the legal title to the land in controversy be made to the plaintiff, Carey.   From this finding and decree the defendant appeals.

The petition alleges, in substance, that the plaintiff, Carey, is qualified to acquire title to town lots in Oklahoma, and that on December 1, 1891, she made settlement upon lots 10, 11, and 12, in block 86, in East Guthrie, and began improving them, and that she has plowed, planted and cultivated said lots and has resided thereon ever since said date; that at the time she initiated her claim to said lots, they were vacant and unoccupied and she took peaceable possession. It further appears from the petition that she made application to the townsite trustees for a deed to said lots in 1892, and that her case was set for hearing on a certain day by said trustees; that the defendant was an adverse claimant to said lots; that on the day of the hearing she was unable to make the deposit of thirty-two dollars required by a rule of the secretary of the interior, and by reason of her poverty no trial was had, and the trustees have conveyed the lots to the defendant, Twine.

There is no allegation that she asked the trustees

for further time or that she was denied a continuance, or that the defendant took any advantage of her or her situation.

The lands embraced in the townsite of East Guthrie were proved up under the act of congress approved May 14, 1890, 26, Stat. at large, 109. This act provides that—

"So much of the public lands in the territory of Oklahoma as may be necessary to embrace all the legal subdivisions covered by actual occupancy for purposes of trade and business, not exceeding twelve hundred and eighty acres in each case, may be entered as town sites for the several use and benefit of the occupants thereof, by three trustees to be appointed by the secretary of the interior for that purpose."

The act further provides that the trustees shall have power to administer oaths, to hear and determine all controversies arising in the execution of this act, and they were required to keep records of their proceedings and file same in general land office.

These tribunals were, by act of congress, created a special tribunal to make entry for the occupants of such lands in Oklahoma as had already been set apart, occupied and improved for purposes of trade and business and residence. These towns had been settled, laid out and improved for over a year at the time the act passed. Congress had, through inadvertance or neglect, failed to provide any means whereby the townsite occupants could procure title to their lots. And recognizing the existing conditions, the act of May 14th, 1890, was passed largely as a remedial statute to protect and preserve the rights already acquired under other laws, which had permitted lands in Oklahoma to be used for townsite purposes, but failed to furnish the machinery for obtaining title.

It is a matter of public history that out of the imperfect and defective laws governing townsites in Oklahoma, and the confused state of society arising from the settlement of a new country and from the further fact that for more than a year after Oklahoma was actually settled and inhabited by an intelligent, enterprising and thrifty people, no laws were in force for the government of the people, except the constitution and the general laws of the United States, the rules of the common law which have by consent became a part of our American jurisprudence, and the stern law of necessity, which a love for justice and right has implanted in the hearts of every patriotic American. There arose numerous adverse and conflicting claims to town lots in the various cities, which have now become marvels of growth, prosperity and energy. And to meet this condition of affairs and furnish to the uncontested claimants a means of speedily acquiring title, and to contestants a tribunal with power and authority to hear the facts and determine their rights, congress enacted the law under which the townsite in question was entered.

By the terms of the act itself as well as the general powers conferred upon the interior department by the laws of the United States, the secretary of the interior was empowered to make all necessary rules and regulations for the government of the trustees in the discharge of their duties. These rules when promulgated have the force and effect of laws of congress, and the courts take judicial notice of them, and can neither ignore them nor annul them. If parties are not content with the rules under which they must present their claims for title to government land, they must apply to the power that makes the rules and have them suspended, amended or revoked. The courts can not do this for them. There is no just law or rule that does not some times work hardship on

some one, but this furnishes no excuse for a non-compliance with them.

So long as a rule of the department, promulgated by authority, is reasonable and not in conflict with any statute, and has for its purpose to aid in the execution of the laws, they are binding upon all parties and the courts.

Where one settles upon public lands with the expectation of acquiring title from the government, he does so with the understanding and upon the condition that the law-making power may impose such conditions as may be necessary for the protection of the government from loss, and the protection of the rights of adverse claimants.

The law under which the trustees were appointed required them to assess the lots embraced in the several entries made by them with such sum as would pay all the expenses of purchase of the land, costs of survey and compensation of the trustees. The rule of the secretary complained of in this case required a deposit by adverse claimants of a sufficient sum to meet the expenses of one day's trial, and this was a reasonable and consistent rule. The purpose of the rule was to secure the compensation of the government officers, protect the government against loss, and to protect the successful litigant against having to pay expenses occasioned by his adversary. It is not in conflict with any statute; denies to no one a substantial right; operates on all alike; was authorized by the law, and unless set aside or revoked by the power that authorized it, is binding on litigants and courts alike. (*Peters vs. U. S.*, 33 Pac. 1031; *Caha vs. U. S.*, 152 U. S. 211).

The rule requiring a deposit for expenses in contest cases is a rule that has prevailed in the land office for years, and has been acquieced in so long that it seems strange that it would be questioned at this late day.

The offer of the plaintiff to pay to the defendant the costs expended by him at this time, comes too late. It would be a strange principle of equity, indeed, that would permit one to settle upon public lands, and notify the department that he was claiming the land, but had no means to make an entry or application, and after a qualified homesteader had made an entry, paid all the fees and expenses, complied with all the conditions and requirements as to residence, improvement and cultivation, and secured a patent from the United States, then on payment of the fees and costs incurred by him, compel him to convey to another. This would be the effect of permitting the plaintiff to recover upon the showing made in the petition in this case. The supreme court of the United States in *Rector vs. Gibbon*, 111 U. S. 276, in construing an act similar in its terms to the one in question, laid down the rule which we think is applicable here. They said "the powers of the commissioners are not essentially different from those of the register and receiver of a land office in cases of conflicting claims to pre-emptions. The latter officers must hear the evidence of parties and decide as to which has the better right to the patent certificate." And this rule applies to the trustees under the act of May 14, 1890. They must hear the evidence of conflicting claimants and must determine who is entitled to the deed, and this they do under the rules promulgated by the secretary of the interior. These decisions and awards, when .made, have the same force and effect as one made by any of the branches of the interior department having control of the disposal of the public lands, and must be treated with the same respect; and the rule enunciated in *Rector vs. Gibbons, supra,* as to when a court of equity will review their action is the true rule in the case, viz. :

"When the legal title has passed from the United

States to one party, when in equity and in good conscience, and by the laws of congress it ought to go to another, a court of equity will convert the holder into a trustee of the true owner and compel him to convey the legal title."

Under the laws of congress as put in execution and aided by the rules of the secretary, the plaintiff in the case at bar was required to make a deposit before her claims could be heard. This was a condition precedent to her acquiring title, and it was necessary for her to make this deposit before her possessory right could ripen into a legal title. Having failed to comply with the law, she forfeited her rights under the law.

The excuse offered by her does not bring her within any of the rules of equity which will release a party from a compliance with the law before seeking the aid of a court of equity. She does not show that her failure to deposit was brought about by the fraud, wrong or misconduct of her adversary, or that it was occasioned by any erroneous application of the law by the trustees. She only complains of the law itself; this, the courts cannot remedy.

There is another defect apparent from the petition which is fatal to plaintiff's case. The act of May 14, 1890, required the trustees to enter the lands occupied for purposes of trade and business for the use and benefit of the several occupants thereof, They were to ascertain who the occupants were and convey to the individual occupants all lots so occupied, and the unoccupied lots were to be sold by the secretary of the interior.

Under the terms of this act, no rights could be initiated by settlement or occupancy after the date of the entry by the trustees. The entry made by them at the land office seggregated the lands embraced in their entry from the public lands for the use and benefit of

its occupants then, in so far as they occupied particular portions of said lands, and the portion not actually occupied at the date' of the entry by the townsite trustees, was subject to sale only and not to settlement. The plaintiff alleges that she settled on these lots on December 1, 1891 almost seven months after the act of congress took effect. We have no knowledge of when the entry was made by the trustees, but in order to give a court of equity jurisdiction to set aside the judgment of a special tribunal created for the purpose of determining a particular question, the petition must affirmatively allege every fact necessary to bring the question before the court. Nothing can be presumed in her favor, as all presumptions are in favor of the legality and regularity of the proceedings and judgment of the officers and tribunal who determined the case. Having determined that the petition does not state a case for equitable jurisdiction, the question arises, has the defendant in error availed himself of the objection? No demurrer was filed to the petition, and the first objection made was a motion to dismiss for want of jurisdiction after the defendant had appeared, filed his answer, and judgment had been rendered. It is contended that the question of jurisdiction is waived, and that the judgment should be affirmed.

A party may wave jurisdiction of the person, and generally does so, by appearance and plea, but the rule in a case of the character under consideration is well stated by Mr. Justice Baldwin, in *Rhode Island vs. Massachusetts*, 12 Pet. 660.

"Jurisdiction is the power to hear and determine the subject matter in controversy between the parties to a suit, to adjudicate or exercise any judicial power over them. * * * An objection to jurisdiction on the ground of exemption from process of the court, or the manner in which a defendant is brought in, is waived by appearance and plea, but where objection goes to

the power of the court over the parties or subject matter, it may be raised at any stage of the proceedings by motion to dismiss, and when apparent to the court by objection, or from the proceedings, the court should surcease its action."

The question of jurisdiction raised in this case goes to the power or authority of a court of equity to set aside the judgment of an inferior tribunal constituted for a particular purpose and whose action is binding on the courts, so long as it does not misapply the law to the facts found, or is not misled by the fraud, accident or mistake of the parties, and this objection may be made at any stage of the proceedings.

The authorities cited and relied upon by counsel for defendant in error are not in conflict with this position.

A court of equity has no power or authority to hear and determine any question of title to public lands until the land department, or tribunal having special jurisdiction in such matters, has determined to whom the title belongs, and the United States has parted with its title to the same.    And before a court of equity will intercede to declare the holder of the legal title a trustee for an adverse claimant, such adverse claimant must show in his bill for relief that he has availed himself of all the rights before the land department officials, and that he has performed every requirement of the law and rules regulating the acquiring of title applicable to the land he claims; and he cannot set up his own laches, neglect, mistake or inadvertance as an excuse for a failure to comply with the law, unless such default was brought about by the fraud, wrong or misconduct of his adversary. No such showing is made in the case at bar, and as it is apparent from the face of the petition that the plaintiff was not entitled to a deed to the lots, and that the townsite board had acted finally in the mat-

ter and determined that defendant was entitled to the conveyance, their action became final unless appealed from or attacked for fraud, mistake or misapplication of the law, and the district court had no authority to hear and determine the questions presented by the petition, and, hence, was without jurisdiction, and the motion to dismiss should have been sustained.

There are a number of other alleged errors in this cause, but inasmuch as we deem the questions decided as decisive of the case, it is unnecessary to further consider the record.

The judgment of the district court of Logan county is reversed and case remanded with instructions to dismiss the petition.

Dale, C. J., having tried the case below, and Bierer, J., having been of counsel, did not sit in this cause; all other Justices concurring.