## J. CUMMINGS VS. P. H. McDERMID.

1. JURISDICTION—*When Raised.* The question of the jurisdiction of the trial court over the subject-matter of the action is always in issue, and is never waived by the failure of parties to object to the jurisdiction of the court, and may be raised in the supreme court for the first time.

2. TOWNSITE TRUSTEES—*Fraud—Insufficiency of Allegations.* In order to give the courts jurisdiction to go behind the findings of fact made in a lot contest, instituted before a board of townsite trustees appointed under the act of congress of May 14, 1890, governing townsites in Oklahoma, and try and determine the cause and render a decree adverse to the award made in such contest on the ground of fraud, it is necessary that the complaint should allege the facts constituting the fraud, with such fullness and particularity, as to show to the court that the action of the officers whose duty it was to determine the controversy must necessarily have been affected thereby to the defeat of the complainant in the contest; and mere general allegations that the defendant, through false and fraudulent representations, and false testimony, procured

the deed to the lot, are not sufficient. The allegations of fact must show that. the fraud which caused the defeat of the complainant was extrinsic or collateral to the matter tried, and not a fraud which was in issue in the contest.

3. TOWNSITE TRUSTEES—*Mistake — Insufficiency of Allegations.* A petition which alleges "that the award of the townsite board is contrary to the findings. by said townsite board, that the plaintiff moved on and occupied the lot in controversy, and improved the same, during the absence of the defendant from the Territory of Oklahoma, and prior to the date that he moved the house thereon," and which does not give all the findings of fact made by the townsite trustees in awarding the lot to the defendant, so that the court can see that the law has been misapplied to the facts as found in the case, is insufficient.

*Error from the District Court of Logan County.*

This was an action by McDermid to recover of Cummings a lot in the town of Mulhall, and from the judgment in plaintiff's favor the defendant brings the case on petition in error to this court.    Reversed.

*Herod, Widmer & Overstreet,* for plaintiff in error.

*Asp, Shartel & Cottingham,* for defendant in error.

The opinion of the court was delivered by

BIERER, J.: P. H. McDermid brought his action in the district court of Logan county, to recover of J. J. Cummings lot 7, in block 9, in the town of Mulhall, Logan county, which he claims by virtue of his settlement upon and occupancy thereof, and improvements made thereon as an occupant of the lot under the government townsite laws.    He claims that the deed was wrongfully awarded by the townsite trustees to Cummings, and that Cummings should be held to hold the lot as a trustee for him, and be required to convey the lot to him.    The defendant filed his answer to the plaintiff's petition, and after reply by the plaintiff, issues were joined and a trial had concerning the disputes of the parties over the lot, and judgment was rendered for

18——IV

plaintiff awarding him the lot, and decreeing that Cummings should make a deed to him therefor, and directing that on his failure so to do, the sheriff of the county should make proper conveyance of the lot to the plaintiff.

The cause is brought here on a transcript of the record which properly presents only the pleadings in the case, and as the case stands the only question that is presented is as to the jurisdiction of the court to hear and determine the matter set out in plaintiff's amended petition, that is, as to whether or not the court had jurisdiction of the cause. No objection in any form was made to the jurisdiction of the court below to entertain the cause upon plaintiff's amended petition, and the question is raised here for the first time.

An objection to the jurisdiction of the court may be presented at any stage of the proceedings. (*Myers v. Berry*, 3 Oklahoma, 612, 41 Pacific, 580; *Twine v. Carey*, 2 Oklahoma, 249, 37 Pacific, 1096.)

The objection to the jurisdiction of the trial court raises one of the few questions that may be raised in the appellate court for the first time. But where the question goes to the jurisdiction concerning the subject matter of the action, it may be considered by the supreme court whether it is raised in the court below or even though it may not have been raised there or in this court by either of the parties.

The amended petition of the plaintiff filed in the district court, and upon which the judgment appears to have been rendered, is quite similar to those presented in numerous cases which have heretofore been determined by this court, where parties sought to reverse the awards of the townsite trustees who were acting under the townsite law of congress put in force in this Territory by the act of May 14, 1890, and in which we have

held that the courts will not, in the absence of a clear showing that the party was defeated in his right to the lot by fraud, imposition or mistake, interfere with the action of these special tribunals in which was reposed the especial duty of hearing and determining these lot contests.    ( *Twine v. Carey*, 2 Oklahoma, 249, 37 Pacific, 1096: *King v. Thompson*, 3 Oklahoma, 644, 39 Pacific, 466 ; *Baldwin v. Mason*, 3 Oklahoma, 237, 41 Pacific 388; *Myers v. Berry*, 3 Oklahoma, 612, 41 Pacific, 580.)

In the last case, *Myers v. Berry*, where the question of the jurisdiction was raised for the first time in the supreme court, the plaintiff's petition, excepting the exhibit thereto, is set out in full.    The petition here differs in substance from that only in the two following paragraphs :

" Plaintiff further alleges that the defendant fraudulently obtained possession of said lot, and plaintiff's improvements thereon, during the absence of this plaintiff from the Territory of Oklahoma, and through false and fraudulent representations and false testimony, before said townsite board, he wrongfully procured the deed to said lot, and voluntarily paid to said townsite board the assessment against said lot, for the purpose of defrauding this plaintiff out of the title to said lot, and to procure the award and deed to said lot."

And

" That the award of the townsite board is contrary to the findings by said townsite board, and that this plaintiff moved on and occupied the lot in controversy and improved the same, during the absence of the defendant from the Territory of Oklahoma, and prior to the date that he moved the house thereon during the months of June and July, 1890, as aforesaid."

Do these paragraphs, or either of them, show sufficient grounds for the interference of a court of equity and to authorize it to hear and determine a controversy already

disposed of by this special land tribunal, and warrant its reversing the decree of that tribunal ? Do they bring the party within the rule already laid down by this court in the cases referred to, and which, in fact, simply follow very numerous decisions of the supreme court of the United States upon the question, which define the cases in which a court of equity may decree to one party the ownership of a tract of land, the title to which has been acquired by another through fraud, imposition or mistake ?

The two allegations of this petition by which it is sought to give the court jurisdiction, and which are not common to the petitions in the other cases that have been presented, are as to fraud and mistake.

The plaintiff's allegation of fraud here is that of misrepresentation and false testimony before the townsite board, by which he alleges the defendant procured the deed to the lot, but he nowhere states what the fraudulent misrepresentations were, nor in what the false testimony consisted, nor whether such fraudulent representations, or such false testimony in any way influenced the action of the townsite trustees, nor that he did not before that tribunal have the evidence or means of showing that the representations of his adversary were false, and that the testimony produced was false. Nor, in fact, is it even alleged that the findings and award made on the trial of the cause were procured through misrepresentations and false testimony, but only that the deed was so procured.

The false claim of one party or the other was no doubt the very subject of the controversy before the townsite trustees, and was the very matter investigated there, and if the courts are to take jurisdiction of these contests upon such general allegations of mere conclusion that

fraud was committed before the townsite board, then the entire system of the law of this country on that question must be reversed, and parties will be allowed, on such mere conclusions, to transfer their causes, from their own choice, from the land department to the courts for determination. This cannot be permitted, and has, in fact, frequently been denied by the supreme court of the United States, where it has been held that allegations of fraud which will constitute grounds for the interference of courts of equity with the determinations of the land department must be fully, clearly and specifically stated, not by way of mere conclusion, but in detail, so as to show to the court of equity by specific allegations that the fraud was one consisting of some deception extrinsic to the matter in contest and such as must necessarily have affected the action of the land tribunal, and deprive the party of his title to the land.

In passing upon the cases already before this court, where parties sought to change the awards of the townsite boards, the court has laid down the rule upon the question as to what the allegations of fraud must be to entitle the courts to enquire into the evidence or facts upon which the awards were made. In *Myers v. Berry, supra*, it is said:

" The courts will not inquire into the facts or evidence upon which findings are based, unless it is clearly made to appear that such findings were procured by fraud, imposition, or misrepresentation, to the manifest injury of the party complaining."

In the case of the *United States v. Throckmorton*, 98 U. S. 61, Mr. Justice Miller, speaking for the court, says:

"On the other hand, the doctrine is equally settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured ev-

idence, or for any matter which was actually presented and considered in the judgment assailed."

And again in the same case:

"That the mischief of re-trying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

In *Marquez v. Frisbie*, 101 U. S. 473, where the relief asked was refused by the supreme court of California and the judgment affirmed by the supreme court of the United States, the petition alleged that,

"The commissioner of the general land office, at the instigation of defendants, fraudulently and unjustly ordered that the surveys of this land should be withheld by the surveyor-general."

And further alleged that,

"Defendants will, on receiving the patent, be at liberty to sell said land to innocent purchasers, and thus wholly defeat the just claim and right of plaintiff, who will thus be fraudlently deprived of the land which he has settled and improved under the guarantee of the laws of the land, and which is evidently the intent and purpose of said defendants in prosecuting their unjust and fraudulent claim to the land aforesaid."

And of this charge it was said by Mr. Justice Miller, who again delivered the opinion of the court on the question:

"It is too obvious for comment that in all this the only use of the words fraud and fraudulent is to stigmatize acts which are adverse to the plaintiff's view of his own rights. But there is not a syllable which defines an act fraudulent in nature, or done or performed under the

influence of corrupt motives, or by corrupt means, by the defendant or by any of the land officers who have had to deal with his claim. These officers are not even named. It is idle at this day to suppose that the expensive machinery of a court of equity is to be put in operation for the purpose of reviewing and reversing the judgment of the tribunals to whom that question is by law entrusted, on such loose, untraversable allegations of fraud in general."

Again on this question in *Vance v. Burbank*, 101 U. S. 514, Mr. Chief Justice Waite, who delivered the opinion of the court, said:

"It has also been settled that the fraud in respect to which relief will be granted in this class of cases must be such as has been practiced on the unsuccessful party, and prevented him from exhibiting his case fully to the department, so that it may properly be said there has never been a decision in a real contest about the subject-matter of inquiry. False testimony or forged documents are not enough, if the disputed matter has actually been presented to or considered by the appropriate tribunal."

In the case of *United States v. Atherton*, 102 U. S. 372, an action brought by the attorney general in the circuit court of the United States for the district of California on behalf of the United States and on behalf of certain settlers and preemptors described in the bill, for the purpose of setting aside a decree of the district court for that district, confirming a claim which had been formally passed upon by the board of commissioners for the settlement of private land claims in California, Mr. Justice Miller, speaking for the court, in affirming the judgment of the circuit court in denying the government the relief asked for, said:

"We should be very much inclined to sustain any bill showing such a squandering of the public land if the allegations had been sufficiently specific to call upon the defendant to answer. Such a bill must rest, however, on

the ground of fraud or mistake, and it is too clear for argument that it should set out the particulars of the fraud, or the manner in which the mistake occurred.

"No copy of the patent is exhibited, nor of the survey with which it is said to differ.

"There is only the general allegation that certain persons, not named therein, conspired together, and by false and fraudulent representations and suppression of facts imposed upon the officers connected with the land office at Washington, and fraudulently procured the patent to be issued.

"No names of the parties who committed the fraud, no names of the persons or designations of the officers imposed on, are given. It is at war with the whole character of proceedings in courts of equity to call in aid its extraordinary power to set aside on these allegations such a solemn public record as a patent of the United States."

In *Quinby v. Conlan*, 104 U. S. 420, Mr. Justice Field, speaking for the court on the matter, said:

"It would lead to endless litigation, and be fruitful of evil, if a supervisory power were vested in the courts over the action of the numerous officers of the land department, on mere questions of fact presented for their determination. It is only when those officers have misconstrued the law applicable to the case, as established before the department, and thus have denied to parties rights which, upon a correct construction, would have been conceded to them, or where misrepresentations and fraud have been practiced, necessarily affecting their judgment, that the courts can, in a proper proceeding, interfere and refuse to give effect to their action. On this subject we have repeatedly and with emphasis expressed our opinion, and the matter should be deemed settled. (*Johnson v. Towsley*, 13 Wall, 72; *Shepley v. Cowan*, 91 U. S. 330–340; *Moore v. Robbins*, 96 id. 530.)

"And we may also add, in this connection, that the misconstruction of the law by the officers of the department, which will authorize the interference of the court, must be clearly manifest, and not alleged upon a possible

finding of the facts from the evidence different from that
reached by them.    And where fraud and misrepresenta-
tions are relied upon as ground of interference by the
court, they should be stated with such fullness and par-
ticularity as to show that they must necessarily have af-
fected the action of the officers of the department. Mere
general allegations of fraud and misrepresentations will
not suffice."

It is true that in all these cases, except the last one
reported from the United States supreme court, the
question was decided upon a demurrer to the bill in
chancery, and in the last case there was a trial on issues
made and a finding by the court negativing the allega-
tions that false and fraudulent representations as to the
settlement were made by the successful party to the
officers of the land department, but the question was one
of jurisdiction—the power of the court to hear and de-
termine the application of the party to have the award,
determination and judgment of the land tribunal re-
versed—just the same.

The subject-matter of the action in those cases, as in
this, was the reversal of the adjudication of this special
tribunal, and the changing of the effect of its decree con-
cerning a tract of land, and if the allegations of the bill
or complaint were not sufficient to call into exercise the
equity powers of the court when attacked by demurrer,
they were not sufficient when opposed by any other form
of objection.

The question of jurisdiction over the subject-matter of
the action may be raised by demurrer to the pleadings
and it is always good practice to so raise it, and poor
practice not to do so, but it may also be raised by other
form of opposition to the relief asked, and being a ques-
tion of jurisdiction over the subject-matter of the action,
it is one of the powers of the court to make the investiga-

tion and determination sought, no matter when or how raised, as we have before seen.

This is not a case, as contended. for. by counsel for.defendant in error, where the allegations of the complaint are indefinite, informal and defective, and still sufficient where the proper objections were not promptly made.   It is a case of total failure to allege some necessary fact or facts to make it clearly appear that the finding and award of the tribunal entrusted with the determination of such disputes, were procured through fraud, and that the fraud practiced was some deception extrinsic or collateral to the matter tried, and not the very question already determined by the land tribunal.   If the mere allegation that false representations and false testimony were used by the successful party in procuring the determination in his favor, (and the allegation here is not that strong, for it only alleges that the deed, and not the judgment in the cause, was so procured), were to be sufficient to give a court of equity jurisdiction to enter again into an investigation of disputes between parties litigant, once settled in the proper tribunal, then there is no case that would ever be at rest, and *Jarndyce v. Jarndyce* would be a numerous reality in Oklahoma courts.

We are compelled to hold, under these various decisions of the supreme court of the United States, and the views of the law of the question already expressed by this court, that the allegations of fraud in the plaintiff's petition were wholly insufficient upon which to ask the court to review the action of the townsite board.

So, too, with the allegation that the award of the townsite board was contrary to the finding of the board, thereby, we suppose, intending to charge that the board had committed a mistake in its application of the law to the facts.   The facts are not set out so that we can de-

termine whether, upon all the facts found by the board,. the townsite board committed error of law or not, and not having done so the district court could not review the findings.

This question has also been determined by this court. in the case of *Myers v. Berry, supra,* where it is said:

" In order to authorize a court of equity to interfere with the final action of a board of town-site trustees appointed under the act of congress of May 14, 1890, on account of the misapplication of the law by such trustees,. the petition must specifically set out the findings of fact made by such trustees, in order that the court may determine whether or not the law was properly applied to the facts found by the trustees."

The findings of fact are not specifically set out in this petition of the plaintiff. He only gives one finding of the board, and does not state what the other findings of fact were, and does not state whether they were for or against the plaintiff, and of course, unless all of the findings of fact were set out in the petition, it does not. appear that they were in favor of the plaintiff, and that upon them the conclusion of law must have followed that the plaintiff was entitled to the lot.

The plaintiff's amended petition, on which the cause was tried and the decree in favor of the plaintiff rendered, gave the court no jurisdiction whatever to render the judgment against the defendant declaring the plaintiff the owner of the lot in controversy, and requiring the defendant to deed the lot to plaintiff, and for this reason the judgment of the court below is reversed, and the court directed to dismiss the cause at the costs of the defendant in error, unless he amends his complaint to bring the case within the views here expressed.

Dale, C. J., having presided in the court below, not sitting; all the other Justices concurring.