JULIA A. THURSTON v. MARY JANE WASHINGTON, *et al.*,

(Filed February · 15, 1907.)

1. **PUBLIC LANDS—Rules of Interior Department—Judgments.** A rule of the secretary of the interior which requires a contestant before townsite trustees appointed under the act of May 14, 1890, to deposit thirty-two dollars with the treasurer of the board before a cause will be heard, is a reasonable rule, which a court of equity will uphold; but a failure to comply with such rule will not render void a judgment of a court of general common law and chancery jurisdiction, where the court had jurisdiction of the subject-matter and of the parties to the action.

2. **EVIDENCE—Sufficient, When.** The evidence in this case examined and held to be sufficient to sustain the judgment of the court.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before John H. Burford, Trial Judge.*

*Cotteral & Horner,* for plaintiff in error.

*F. H. McGuire* and *L. O. Lytle,* for defendant in error.

STATEMENT OF FACTS.

This was an action brought by Julia A. Thurston against Mary Jane Washington, heir of William Washington, deceased, and his unknown heirs and devisees. It involves the title to lots 21 and 22 in block 3 in that subdivision of the city of Guthrie known as West Guthrie. The facts may be briefly stated as follows:

It appears that the property in question was first claimed by Mrs. O. V. Hayes and by William Washington, each of said parties claiming to be the original settler and occupant of said property, and entitled to a deed thereto from the townsite trustees appointed by the secretary of the interior under and pursuant to act of congress. A contest was instituted between the parties before the townsite trustees, and under the rules and regulations of the secretary of the interior the parties were required to make a deposit of $32, to defray the expenses of the proceedings. Washington failed to comply with this rule, and the lots were awarded to Mrs. Hayes, and deed was issued to her on June 15, 1893. On June 21, 1893, Mrs. Hayes conveyed the property to Carrie R. Thwing. On July 28, 1893, Washington commenced suit in the district court of Logan county against Carrie R. Thwing, alleging that he was the first settler and occupant of said lots, and the rightful owner thereof, that he was entitled to a deed to said property, and that the same had been wrongfully awarded to Mrs. Hayes, that neither Mrs. Hayes nor Carrie R. Thwing had ever improved or occupied said lots, and that Carrie R. Thwing had notice of such proceedings, and prayed that a resulting trust be declared in his

favor, on the ground of misapplication of the law by the townsite trustees. It further appears that H. R. Thurston, the husband of plaintiff in error, was attorney for William Washington. Both parties appeared and introduced evidence to sustain their respective contentions. The court found the issues in favor of the plaintiff and against the defendant, and entered a decree accordingly, which decree, no appeal having been taken, became in all respects final. Subsequently Washington died, leaving his widow, Mary Jane Washington, the defendant in error. It further appears that in the latter part of 1902, the plaintiff in error, desiring to purchase said lots, and acting on the belief that the judgment rendered in the case between Washington and Thwing was void, she procured a deed from Carrie R. Thring, as well as from Mary Jane Washington, for the premises, and instituted this suit to perfect and quiet her title. Mary Jane Washington appeared and filed an answer, denying the material allegations contained in the petition, and as a further defense to the action, alleged that the deed from her was procured through fraud and misrepresentation, and that no consideration had been paid for the procurement thereof by the plaintiff in error. The cause was submitted to the court, and the issues were found in favor of the defendant and against the plaintiff, and judgment entered in accordance therewith. The plaintiff appeals.

Opinion of the court by

HAINER, J.: But two questions are urged for a reversal of the judgment. They are: (1) That the judgment upon which this action was founded was void: and

(2) that the evidence was insufficient to sustain the findings and judgment of the court in this action.

Upon the first proposition, it is contended that since William Washington failed to make the deposit, as required by the rules and regulations of the secretary of the interior, that the judgment of the district court of Logan county rendered in his favor, decreeing Mrs. Hayes and Carrie R. Thwing to hold the legal title in trust for his use and benefit, was, and is, absolutely void. This contention of counsel for plaintiff in error is based upon the doctrine announced by this court in the case of *Twine v. Carey,* 2 Okla. 249, where it was held that:

"A rule of the secretary of the interior, which requires a contestant before townsite trustees, appointed under act of May 14, 1890, to deposit thirty-two dollars with the treasurer of the board before a cause will be heard, is authorized by the law, is a reasonable rule, and a contestant or claimant failing to comply with the rule cannot invoke the aid of a court of equity."

This decision was rendered in June, 1894, and after the decree in controversy had become final. We do not understand that this decision holds that the fact that a party had failed to comply with the rules of the secretary of the interior with reference to deposit, would render a judgment of the district court even voidable, much less void. The court in this case held that such a rule having been promulgated by the secretary of the interior, and being a reasonable rule and regulation, the courts would enforce the same, and where it appeared that the party had failed to comply with the rule, that he could not invoke the well-

recognized rules of equity. The court had jurisdiction of the subject-matter; it had jurisdiction of the parties and it had the power and jurisdiction to render judgment in the particular case, and this is all that is essential, in order to render a valid judgment. No appeal having been taken therefrom the judgment became final and absolute.

In *Parker v. Lynch,* 7 Okla. 631, this court, in defining jurisdiction, said:

"Jurisdiction is the authority by which courts and judicial officers take cognizance of and decide cases. Power to hear and determine a cause. If a court has jurisdiction of the persons to the action, and the cause is the kind of a cause triable in such court, it has jurisdiction of the subject of the action and has the power to render any rightful judgment therein."

In *Vorhees v. The Bank of the United States,* 10 Pet. 449, the defendant in an action of ejectment was the defendant in error. He claimed title from certain proceedings in attachment in Ohio. The following objections were taken to them: 1. No affidavit, as required by the statute, was filed with the clerk; and the law provided, that, if this were not done, the writ should be quashed on motion. 2. Three months' notice of the attachment was to be given in a newspaper, and fifteen days' notice was to be given by the auditors. It did not appear that either had been done: 3. The defendant was to be called three times, and his defaults recorded. No such record appeared to have been made: 4. The auditors were not to sell until after twelve months. It did not appear when the sale was made: 5. The return showed a sale to Foster and Woodward; the deed was made

to Stanley, and no connection appeared between them in the record. The court there being competent to take jurisdiction, and having acquired jurisdiction by the seizure of the property, it was held that all its acts and orders made during the progress of the case were beyond the reach of collateral inquiry, and could be assailed only in a direct proceeding had for that purpose before a competent tribunal. The court, in the course of the opinion, said:

"The line which separates error in judgment from the usurpation of power, is very definite; and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally, when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so. In the one case, it is a record importing absolute verity: in the other, mere waste paper; there can be no middle character assigned to judicial proceedings, which are irreversible for error. Such is their effect between the parties to the suit; and such are the immunities which the law affords to a plaintiff who has obtained an erroneous judgment or execution. It would be well-merited reproach to our jurisprudence, if an innocent purchaser, no party to the suit, who had paid his money on the faith of an order of a court, should not have the same protection under an erroneous proceeding, as the party who derived the benefit accruing from it. A purchaser under judicial process, pays the plaintiff his demand on the property sold; to the extent of the purchase-money, he discharges the defendant from his adjudged obligation. Time has given an inviolable sanctity to every act of the court preceding the sale, which precludes the defendant from controverting the absolute right of the plaintiff to the full benefit of his judgment; and it shall not be permitted, that the purchaser shall be answerable for de-

fects in the record; from the consequence of which the plaintiff is absolved. Such flagrant injustice is imputable neither to the common nor statute law of the land. If a judgment is reversed for error, it is a settled principle of the common law, coeval with its existence, that the defendant shall have restitution only of the money; the purchaser shall hold the property sold; and there are few, if any, states in the Union who have not consecrated this principle by statute.

"This great rule, established for the protection of purchasers on the faith of judicial process, will be utterly prostrated, encouragement will be given to defendants in judgments, their heirs and privies, to take advantage of the security into which honest purchasers have been lulled, if any judicial proceeding which could stand the test of a writ of error or appeal, if taken in time, or had become irreversible directly, could be avoided collaterally. Acts of limitation becomes useless, if a defendant is allowed to evade them, by avoiding judgments or executions, on the suggestion of defects or omission in the record, which can be reviewed only by an appellate court; a direct premium is held out for delaying the resort to the mode pointed out by law for correcting the errors of judicial proceedings. His debt is paid by the purchaser; the property purchased is restored to the defendant, without any obligation to refund and that which was, when sold, of little value, and bought at its full price, paid to the defendant's use, becomes his rightful estate, when the remote out-lot has become a part for commerce, and covered with valuable improvements. Had he brought his writ in time, and reversed the judgment or execution on which it was sold, justice would have been done him, by a restitution of the purchase money; and to the purchaser, by leaving him in the quiet enjoyment of the property purchased."

In *Tilton v. Cofield,* 93 U. S. 163, it was held that:

"A court of equity cannot act as a court of review, and correct errors of a court of law, nor can it, in the absence of fraud, collaterally question the conclusiveness of a judgment at law."

Nor is the point well taken that the evidence in this case is insufficient to sustain the findings and judgment of the court. The court, at the request of the plaintiff, made special findings of fact, and in our opinion the evidence is sufficient to sustain and uphold each material fact found by the trial court.

Finding no error in the record, the judgment is affirmed.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.