## CITIZENS' TRADING CO. v. BASS.

No. 1466.   Opinion Filed January 16, 1912.

(120 Pac. 1095.)

**TRUSTS—Suit to Establish—Petition—Sufficiency.** Where, in a suit to have the purchaser from the holder of a patent of a town lot in a town in the Osage Nation declared the trustee for a corporation, the petition fails to allege what steps were taken by the corporation in endeavoring to have the patent issued to it, and fails to set forth the grounds upon which the commission acted in refusing the corporation the right to buy, a demurrer thereto is properly sustained.

(Syllabus by Rosser, C.)

*Error from District Court, Osage County; John J. Shea, Judge.*

Action by the Citizens' Trading Company against William G. Bass. Judgment for defendant, and plaintiff brings error. Affirmed.

*Grinstead, Mason & Scott,* for plaintiff in error.

*Boone, Leahy & MacDonald,* for defendant in error.

Opinion by ROSSER, C. This is an appeal from a judgment in the district court of Osage county, sustaining a demurrer to plaintiff's petition. The petition alleges that the plaintiff is a corporation, and for more than twenty years prior to the 3d day of March, 1905, was in the exclusive possession of a parcel of

land in the city of Pawhuska, Okla., now known as lot 9, block 84, and that on said date and for a long time prior thereto, it had permanent improvements on the lot; that the plaintiff and its grantors were licensed Indian traders at the Osage agency; that the land was used by it and its grantors in connection with their business; that on the 3d of March, 1905, plaintiff had permanent improvements on the lot, consisting of one frame barn, used for the storage of baled hay and agricultural implements; that the lot was partially inclosed with a seven-foot picket fence, erected on posts permanently placed on the lot, and that the lot was being used by plaintiff on the 3d of March, 1905, for a wagon yard, in connection with its mercantile business. The petition then proceeds as follows:

"Fourth: That on the 3d day of March, 1905, the Congress of the United States enacted a law, commonly known as the 'Osage Townsite Bill' (33 Stat. L. p. 1601), providing for the survey and sale of the lots in the townsite of Pawhuska, Oklahoma, aforesaid; that according to the provisions of said act it was provided that any person in possession of lots in said townsite of Pawhuska, and having permanent improvements thereupon, should have the preference right to purchase the same at the appraised value thereof; that said lot nine (9), block eighty-four (84), Pawhuska, Oklahoma, as aforesaid, was appraised at the sum of $100.00, which plaintiff was at all times ready and willing to pay to the said Osage Townsite Commission upon the execution to it of a proper deed of conveyance, and being ready and willing to comply with all the rules and regulations of the Department of the Interior relative to the proof of occupancy and improvements on said property, but said offer and proof was declined; that in so doing said commission made a mistake of law, and that the rules and regulations provided by the Secretary of the Interior for the government of said Osage Townsite Commission did not provide for an appeal from its decision.

"Fifth. That the Osage Townsite Commission, upon whom devolved the duty of appraising, awarding and conveying the lots in said city of Pawhuska by virtue of the provisions of Osage townsite act, wrongfully refused to award the lot herein described to this plaintiff, and on the contrary and without authority of law on or about the ——— day of January, 1906, attempted to sell, and on or about the 29th day of August, 1906, attempted to convey said lot to one J. W. Martin, said deed being approved by

C. F. Larabee, Acting Commissioner of Indian Affairs, October 27, 1906, and E. A. Hitchcock, Secretary of the Interior, November 2, 1906, and that thereafter said deed was delivered to the said J. W. Martin, who caused it to be recorded in the office of the register of deeds in and for Osage Indian Reservation, Oklahoma Territory, on the 16th day of November, 1906, and is recorded in town lot deed record 1 at page 336 thereof; that this plaintiff protested against the sale of said property as aforesaid, and tendered the appraised value thereof, to wit, the sum of $100, to the said Osage Townsite Commission and to the said J. W. Martin; that by a purported deed of date May 10, 1906, the said J. W. Martin purported to convey to the defendant, William G. Bass, the full and complete fee-simple title to said lot for the purported consideration of $1,000, said deed being filed of record in the office of the register of deeds in and for Osage Indian Reservation, Oklahoma Territory, on the 21st day of September, 1906, and is recorded in warranty deed record 1, at page 174 thereof of the records in said office; that on or about the 21st day of September, 1906, and as soon as plaintiff was informed of the purported transfer aforesaid, he notified the defendant, William G. Bass, of his possession of said lot and of his claims to the same, at the same time offering and tendering to the said defendant the sum of $100, the appraised value of said property; that the plaintiff at all times herein mentioned had permanent, substantial and valuable improvements on said property, and was in the open, notorious, and exclusive and continuing possession of said property and is now in possession of the same."

It further alleges that neither the defendant, nor his grantors, was ever in possession of the property, or had any improvements thereon, and that the action of the Osage Townsite Commission in conveying the property to the said J. W. Martin was without authority of law, and in violation of plaintiff's rights, and void. It further tendered into court the sum of $100, appraised value of the property, for the use and benefit of the defendant, Bass, or any other person to whom it might be found to belong, and prayed judgment; that it is the legal owner of the lot; and that the refendant, Bass, be decreed to hold legal title for its use and benefit, and be required to convey the lot to plaintiff, and that in lieu of the conveyance the judgment and decree of the court stand as such conveyance.

The act governing townsites in the Osage Nation, so far as it applies to the question involved here, is as follows:

"Provided, that said lots, shall be appraised at their real value, exclusive of improvements thereon or adjacent thereto, and the improvements appraised separately; and provided, further, that any person, church, school, or other association in possession of any of said lots, and having permanent improvements thereon shall have a preference right to purchase the same at the appraised value, but in case the owner of the improvements refuses or neglects to purchase the same, then such lots shall be sold at public auction at not less than the appraised value, the purchaser at such sale to have the right to take possession of the same upon paying the occupant the appraised value of the improvements." (Act March 3, 1905, c. 1479, 33 Stat. 1061.)

It does not appear from the petition when the right to acquire these lots could have been exercised. The petition does not show whether they were for sale at any time before the month of January, 1906, though it does allege that the plaintiff had a vested right to purchase the property from and after the passage of the act. Nor does the petition show how Martin purchased, whether at public auction, or after a contest with plaintiff, though it would appear from a reading of the whole petition that the lot was sold at public auction. The petition states that plaintiff was ready and willing to pay the appraised price to the townsite commission, but does not allege that it tendered the amount before the sale to Martin, and the reasonable inference from the petition is that no tender was made, because the averment is that "plaintiff was at all times ready and willing to pay to the said Osage Townsite Commission upon the execution to it of a proper deed of conveyance." This inference is strengthened by the subsequent allegation of the petition that plaintiff protested against the sale and tendered the appraised price of the property to the townsite commission and to Martin, and later to the defendant, Bass, after the sale to him. The petition does not allege or show that anything was ever filed before the townsite commission, or any written protest made prior to the sale, and it does not allege or show that any effort was made, except at the time the protest against the sale was made, and the tender made, to prevent the

Secretary of the Interior from issuing deed to the property. It also appears from the petition that while the property was sold in January, 1906, and though the defendant purchased the property on the 21st day of September, 1906, that the plaintiff did not bring this suit until the 20th day of November, 1908.

The demurrer to the petition was properly sustained. It was the duty of the plaintiff to assert its rights before the commission in a legal way, and the courts have no power to act in cases of this kind, where the petitioner has not used all proper efforts to obtain his rights before the land department. *Twine v. Carey,* 2 Okla. 249, 37 Pac. 1096. The land department was created for the purpose of passing upon the rights of claimants to these lots. *Tynon v. Hall,* 22 Okla. 684, 98 Pac. 895; *Adams v. Couch,* 1 Okla. 17, 26 Pac. 1009; *Ross v. Stewart,* 25 Okla. 611, 106 Pac. 870. And it is only in cases where the department has been mistaken as to the law, or where, through fraud or gross mistake of fact, it has rendered a wrong decision that the courts will interfere. *United States v. Marshall Mining Co.,* 129 U. S. 579, 9 Sup. Ct. 343, 32 L. Ed. 734; *Gonzales v. French,* 164 U. S. 338, 17 Sup. Ct. 102, 41 L. Ed. 548; *Quinby v. Conlan,* 104 U. S. 420, 26 L. Ed. 800; *Ross v. Stewart,* 25 Okla. 611, 106, Pac. 870; *Leak v. Joslin,* 20 Okla. 200, 94 Pac. 518; *Brooks v. Garner,* 20 Okla. 236, 94 Pac. 694, 97 Pac. 995; *Thornton v. Perry,* 7 Okla. 441, 54 Pac. 649; *Paine v. Foster,* 9 Okla. 213, 53 Pac. 109; *Wallace v. Adams,* 143 Fed. 716, 74 C. C. A. 540; *Rector v. Gibbon,* 111 U. S. 276, 4 Sup. Ct. 605, 28 L. Ed. 427; *Baldwin v. Starks,* 107 U. S. 463, 2 Sup. Ct. 473, 27 L. Ed. 526; *Garrett v. Walcott,* 25 Okla. 574, 106 Pac. 848. And before a court can pass upon a question of that sort, the plaintiff must show in what way the matter was brought before the townsite commission, and what was before it upon which it acted. The plaintiff in this case does not show any of these things. It does not show what attempt it made to get the land department to schedule the lot to it. It does not allege that it filed a contest, or attempted to file a contest, before the department which it refused to hear. It was not specific enough. See *Durango Land & Coal Co. v. Evans,* 80 Fed. 425, 25 C. C. A. 523, for a full discussion as to pleadings in such cases.

In the case of *Quinby v. Conlan,* 104 U. S. 420, 26 L. Ed. 800, Mr. Justice Field said:

"The misconstruction of the law by the officers of the department, which will authorize the interference of the court, must be clearly manifest, and not alleged upon a possible finding of the facts from the evidence different from that reached by them, and where fraud and misrepresentations are relied upon as grounds of interference by the court, they should be stated with such fullness and particularity as to show that they must necessarily have affected the action of the officers of the department. Mere general allegations of fraud and misrepresentations will not suffice. *United States v. Atherton,* 102 U. S. 372 [26 L. Ed. 213]." (*Marquez v. Frisbie,* 101 U. S. 473, 25 L. Ed. 800.)

In *James v. Germania Iron Company,* 107 Fed. 597, 46 C. C. A. 476, Judge Stanford said:

"But the judgment and conveyance of the department do not conclude the rights of the claimants to the land. They rest on established principles of law and fixed rules of procedure, which condition their initiation and prosecution, the application of which to the facts of each case determines its right decision; and, if the officers of the land department are induced to issue a patent to the wrong party by an erroneous view of the law, or by a gross or fraudulent mistake of the facts, the rightful claimant is not remediless. He may avoid this decision and charge the legal title derived from the patent which they issue with his equitable right to it on either of two grounds: (1) That upon the facts found, conceded, or established without dispute at the hearing before the department its officers fell into an error in the construction of the law applicable to the case which caused them to refuse to issue the patent to him, and to give it to another (*Bogan v. Mortgage Co.,* 63 Fed. 192, 195, 11 C. C. A. 128, 130, 27 U. S. App. 346, 350; *U. S. v. Winona & St. P. R. Co.,* 67 Fed. 948, 958, 15 C. C. A. 96, 106, 32 U. S. App. 272, 288; *U. S. v. Northern Pac. R. Co.,* 95 Fed. 864, 870, 37 C. C. A. 290, 296; *Cunningham v. Ashley,* 14 How. 377, 14 L. Ed. 462; *Barnard's Heirs v. Ashley's Heirs,* 18 How. 43, 15 L. Ed. 285; *Garland v. Wynn,* 20 How. 6, 15 L. Ed. 801; *Lytle v. Arkansas,* 22 How. 193, 16 L. Ed. 306; *Lindsey v. Hawes,* 2 Black. 554, 562, 17 L. Ed. 265; *Johnson v. Townsley,* 13 Wall. 72, 85, 20 L. Ed. 485; *Moore v. Robbins,* 96 U. S. 530, 538, 24 L. Ed. 848; *Bernier v. Bernier,* 147 U. S. 242, 13 Sup. Ct. 244, 37 L. Ed. 152); or (2) that through fraud or gross mistake they fell into a misapprehension of the facts proved before them, which had the like effect. *Gon-*

*zales v. French,* 164 U. S. 338, 342, 17 Sup. Ct. 102, 41 L. Ed. 458. If he would attack the patent on the latter ground, and avoid the department's finding of fact, however, he must allege and prove not only that there was a mistake in the finding, but the evidence before the department from which the mistake resulted, the particular mistake that was made, the way in which it occurred, and the fraud, if any, which induced it, before any court can enter upon the consideration of any issue of fact determined by the officers of the department at the hearing. *U. S. v. Northern Pac. R. Co.,* 95 Fed. 864, 870, 882, 37 C. C. A. 290, 296, 308; *United States v. Atherton,* 102 U. S. 372,.374, 26 L. Ed. 213; *U. S. v. Budd,* 144 U. S. 154, 167, 168, 12 Sup. Ct. 575, 36 L. Ed. 384; *U. S. v. Mackintosh,* 85 Fed. 333, 336, 29 C. C. A. 176, 179, 56 U. S. App. 483, 490; *U. S. v. Throckmorton,* 98 U. S. 61, 66, 68, 25 L. Ed. 93; *Marquez v. Frisbie,* 101 U. S. 473, 476, 25 L. Ed. 800; *Steel v. Refining Co.,* 106 U. S. 447, 451, 1 Sup. Ct. 389, 27 L. Ed. 226; *French v. Fyan,* 93 U. S. 169, 172, 23 L. Ed. 812; *Ehrhardt v. Hogaboom,* 115 U. S. 67, 69, 5 Sup. Ct. 1157, 29 L. Ed. 346; *Heath v. Wallace,* 138 U. S. 573, 575, 11 Sup. Ct. 380, 34 L. Ed. 1053; *Barden v. Railroad Co.,* 154 U. S. 288, 14 Sup. Ct. 1030, 38 L. Ed. 992."

The allegations of the petition are too vague and indefinite as to what actually took place before the townsite commission. It should have alleged with particularity everything done by plaintiff before the townsite commission, and everything done by the commission. It is true the petition alleges facts sufficient to show plaintiff was entitled to purchase the lot, provided he made due effort to exercise his right, but it does not show when the sale of lots to owners of improvements began, when, if ever, plaintiff appeared and demanded the right to purchase, nor for what reason the commission failed to sell to plaintiff, though there is a fair inference that plaintiff has neglected to assert its right as required by the statute. Plaintiff cannot recover on the facts alleged. If permitted to do so, any person having improvements might have ignored the commission, and, after the patent was issued, applied to the courts to obtain that which his own negligence had lost. This cannot be the law. *Ross v. Stewart,* 25 Okla. 611, 106 Pac. 870; *Twine v. Carey,* 2 Okla. 249, 37 Pac. 1096.

The judgment of the lower court sustaining the demurrer should be sustained.

By the Court:   It is so ordered.

All the Justices concur.