LEAK *et al.* v. JOSLIN.

No. 686, Ind. T.   Opinion filed Feb. 18, 1908.

(94 Pac. 518.)

**PUBLIC LANDS—Indian Territory Town Sites—Equity—Jurisdiction.**
When town-site commissioners, by virtue of an act of Congress otherwise known as the "Supplemental Creek Agreement" (March 1, 1901, c. 676, 31 Stat. 861), where there is no conflict as to the facts, but by a misconstruction of the law as applied to the facts, schedule a lot to a party who is not entitled to same under the law, after title has passed to a private party, courts of equity will inquire as to whether or not such title shall be held as trustee for the party really entitled to same.

(Syllabus by the Court.)

*Error from United States Court for the Western District of the Indian Territory, at Wagoner; before Louis Sulzbacher, Judge.*

Action by Winnie Joslin against Amanda Leak and John Leak. Judgment for plaintiff, and defendants bring error. Reversed.

This action was instituted in the United States Court for the Western District of the Indian Territory at Wagoner on the 14th day of October, A. D. 1904, and summons issued thereon, being a statutory action in the nature of ejectment. In that court Winnie Joslin was plaintiff, and Amanda Leak and John Leak

defendants, and hereafter reference will be made to them as they appeared in the court below.

Plaintiff alleged that on the 8th day of March, 1904, she was seized and possessed of lot 3 in block 465 in the city of Wagoner, Ind. T.; the same having been conveyed to her on said date in fee by a deed made and executed and delivered to her by P. Porter, principle chief of the Muskogee Nation, which deed was approved on the 17th day of June, 1904, by Eathan Allen Hitchcock, Secretary of the Interior. A copy of said deed is attached and referred to as Exhibit A. Said deed is in regular form, reciting:

"Whereas, a town-site commission heretofore appointed and acting under authority of the act of Congress approved March 1, 1901, and ratified by the Creek Nation May 25, 1901, has appraised the lots in the town of Wagoner in said nation; and, whereas, the plat of said town had been approved on the 10th day of October, 1900, by the Secretary of the Interior, and was duly placed on file; and whereas, said commission had appraised all of the lots in said Wagoner at their true value, which appraisal had been approved by the Secretary of the Interior; and whereas, the said commission had awarded the real estate described herein to Winnie Mackey, who had paid twenty dollars, the full amount of the purchase price, into the treasury of the United States, to the credit of the Muskogee or Creek Tribe of Indians."

Then, through the granting clause, which states under and by virtue of the power and authority vested in him by the said act of Congress of the United States that he thereby, as principal chief of the Muskogee Nation, grants, sells, and conveys to the said Winne Mackey, her heirs and assigns, forever, all the rights, title, and interest in and to lot 3 block 465 in the town of Wagoner, Muskogee (Creek) Nation, Ind. T., and according to the plat thereof on file, as aforesaid. Then follows the signature, as aforesaid, under date of March 9, 1904, which is in due form. It appears that Winnie Mackey afterward married a man by the name of Joslin, and at the time this action was instituted her name was Winnie Joslin.

Afterwards, on the 20th day of December, 1904, the defendants filed their amended answer and cross-complaint wherein they admitted that the plaintiff had the deed hereinbefore referred to, which had been executed and delivered to plaintiff by the principal chief of the Creek Nation, and which had been approved June 17, 1904, covering said lot 3 in block 465 in the town of Wagoner. But defendants further alleged that they were in peaceable possession of said lot, occupying and using the same. They deny that they unlawfully retained the same, and that they ejected plaintiff from said premises, and denied that they were in possession of any of said lot except the strip on the north side thereof, described as follows, to wit: Beginning at the northeast corner of said lot 3, running diagonally across said lot 3 to a point on the west side of said lot 56 feet south of the northwest corner of said lot; thence north 56 feet to said northwest corner of said lot, thence east along said line between said lots 2 and 3 to the place of beginning.

They further allege that on the 25th day of March, 1897, the defendant Amanda Leak purchased the Indian possessory right to said lot 3 of said block and strip inclosed, as hereinbefore described, from J. C. and P. C. Overton, members of the Muskogee (Creek) Tribe of Indians, who had the legal right to sell and convey the same, such conveyance being attached as an exhibit and properly designated; it appearing at that time that said Amanda Leak went by the name of Amanda Proctor; that immediately after such purchase from the Overtons the defendants inclosed said lot or property, which did not exceed four acres, and built thereon a four-room house, and at the time this action was instituted by the plaintiff that she, with her husband, Leonard Leak, was residing thereon and in actual possession of the same, and had been continuously from the 25th day of March, 1897; that such inclosed property of which they were in the actual possession, with improvements theron as aforesaid, comprised what is known as said lot number 2, and the strip off of said lot number 3 hereinbe-

fore described; that the said lots were laid off and platted by the town-site commission of the city of Wagoner appointed and acting under authority of act of Congress approved March 1, 1901, c. 676, 31 Stat. 861, and that said lot number 2 was scheduled to defendant Amanda Leak and lot number 3 was scheduled by the commission to plaintiff Winnie Joslin; that the said defendants are uneducated people, and did not know that said commission had scheduled any part of said inclosure to plaintiff until 60 days prior to the institution of this action, at which time said plaintiff undertook forcibly to take possession of said strip inside of defendants' inclosure, and that up to that time defendants believed that the land inclosed by said inclosure was comprised in said lot 2, and they allege that said town-site commission, by a mistake of law, scheduled said strip to the plaintiff, when in fact uncontradicted and in law it should have been scheduled to defendant, and that the plaintiff never laid any claim to said strip until same had been scheduled to her as aforesaid; that said plaintiff had no right to said strip except the right that grew out of the fact that same was scheduled to her by said commission.

It is further alleged that the said inclosure containing said lot number 2 and the said fraction of lot number 3 covered all the land owned or claimed by the said defendant Amanda Leak at that time in the city of Wagoner, and that the same was less than four acres; that said defendants believed that when they were paying the appraisement on said lot number 2 they were paying on all of said inclosure, and never discovered the error or mistake until about 60 days prior to the institution of this action; that the said Amanda Leak is the equitable owner of said fractional lot, and is entitled to have the legal title conveyed to her, and that the plaintiff has no title to said strip except in trust for defendants; that in equity and good conscience said plaintiff ought to make a deed conveying all her right, title, and interest to said defendants, upon said defendants paying said amount of money to said plaintiff, with interest paid by her on said strip or fractional

lot; that defendants are not advised and have no way of ascertaining what amount plaintiff has expended on said strip, but that they then and there tender in open court whatever amount may be necessary to reimburse the plaintiff for what she has paid out; and that said defendants then and there offered to deposit said amount with the clerk of the court, or any one else under the direction and order of said court, whenever the exact amount due the plaintiff is ascertained. Defendants further allege that they have no complete and adequate remedy at law, and that said plaintiff is insolvent, and move that said cause be transferred to the equity side of the docket, and that she have the relief prayed for.

Thereafter, on the 29th day of April, 1905, the court considered the demurrer filed by the plaintiff to the answer and cross-complaint of the said defendants and sustained the same, to which action of the court the defendant duly 'excepted. And afterwards, on the 30th day of July, the cause coming on to be heard, the defendants elected to stand upon their pleas. And thereupon judgment was rendered in favor of the plaintiff for the recovery of the said strip or fractional part of said lot number 3.

*Charles G. Watts* and *De Roos Bailey,* for plaintiffs in error.
*Robert F. Blair,* for defendant in error.

WILLIAMS, C. J. (after stating the facts as above). In this cause, from the allegations of the answer and cross-complaint of the defendants the question is presented, by misconstruction of the law as to the fractional part of the lot of land in question having been taken from the defendants, who had acquired the legal right thereto under the sanction of the laws then in force in the Indian Territory, and a patent to same having been issued to said plaintiff in accordance with law, whether or not a court of equity has power to grant relief to the injured party.

In the case of *Johnson v. Towsley,* 13 Wall. (U. S.) 72, 20 L. Ed. 486, it is said:

"The contest arises out of rival claims to the right of preemption of the land in controversy. The register and receiver, after hearing these claims, decided in favor of Towsley, the complainant, and allowed him to enter the land, received his money, and gave him a patent certificate. On appeal to the commissioner of the land office their action was affirmed, but on further appeal to the Secretary of the Interior the action of these officers was reversed on the construction of an act of Congress, in which the Secretary differed from them, and on that decision the patent was issued to Johnson.   *   *   *   On the other hand, there has always existed in courts of equity the power in certain classes of cases to inquire into and correct mistakes, injustice, and wrong in both judicial and executive action, however solemn the form which the result of that action may assume, when it invades private rights; and by virtue of this power the final judgments of courts of law have been annulled or modified, and patents and other important instruments issuing from the crown, or other executive branch of the government, have been corrected or declared void, or other relief granted. No reason is perceived why the action of the land office should constitute an exception to this principle. In dealing with the public domain under the system of laws enacted by Congress for their management and sale, that tribunal decides upon private rights of great value, and very often, from the nature of its functions, this is by a proceeding essentially *ex parte,* and peculiarly liable to the influence of frauds, false swearing, and mistakes.   *   *   *   And so, if for any other reason recognized by courts of equity as a ground of interference in such cases the legal title has passed from the United States to one party, when, in equity and in good conscience, and by the laws which Congress has made on the subject, it ought to go to another, 'a court of equity will', in the language of this court in the case of *Stark v. Starrs,* 6 Wall. (U. S.) 402, 18 L. Ed. 925, just cited, 'convert him into trustee of the true owner, and compel him to convey the legal title.' In numerous cases this has been announced to be the settled doctrine of this court in reference to the action of the land officers. *Lytle v. Ark.,* 22 How. (U. S.) 193, 16 L. Ed. 306; *Garland v. Wynn,* 20 How. (U. S.) 8, 15 L. Ed. 802; *Lindsey v. Hawes,* 2 Black (U. S.) 559, 17 L. Ed. 268.   *   *   *   Undoubtedly there has been in all of them some special ground for the exercise of the equitable jurisdiction, for

this court does not and never has asserted that all the matters passed upon by the land office are open to review in the courts. On the contrary, it is fully conceded that when those officers decide controverted questions of fact, in the absence of fraud, or imposition or mistake, their decision on these questions is final, except as they may be reversed on appeal in the department. But we are not prepared to concede that when in the application of the facts as found by them they, by misconstruction of the law, take from a party that to which he has acquired a legal right under the sanction of those laws, the courts are without power to give any relief. And this is precisely what this court decided in the case of *Minnesota v. Bachelder*, 1 Wall. (U. S.) 109, 17 L. Ed. 551, and in the case of *Silver v. Ladd,* 7 Wall. (U. S.) 219, 19 L. Ed. 138."

In this cause, by the demurrer it is admitted that the defendants below, the owners of the improvements on said fractional lot, under and by virtue of an act of Congress approved March 1, 1901, and ratified by the Muskogee (Creek) Nation May 25, 1901, otherwise known as the "Supplemental Creek Agreement," acquired a legal right to said fractional part of said lot, and that it was the duty of the town-site commission under said act to schedule the same to said defendants, and a patent thereto should have been issued in favor of said defendants. By the demurrer the plaintiff further admitted that up to the time the schedule was made by the town-site commission she had no interest or right whatever to said fraction of said lot, but that said defendants, in accordance with law, were the owners of the improvement and entitled to have said lots scheduled to them, and that through misconstruction of law as applied to the facts the same was scheduled to the plaintiff, and that they have neither been guilty of laches nor have any adequate remedy at law. By said demurrer plaintiff admits all of these facts to be true. The court below should have overruled same, and transferred said cause to the equity side of the docket. *Minn. v. Bachelder*, 1 Wall. (U. S.) 109, 17 L. Ed. 551; *Silver v. Ladd,* 7 Wall. (U. S.) 219, 19 L. Ed. 138; *Moore v. Robins*, 96 U. S. 530, 24 L. Ed. 849; *Rector v.*

*Gibbons,* 111 U. S. 276, 28 L. Ed. 427; *Johnson v. Towsley, supra; Lytle v. Wynn, supra; Lindsey v. Hawes, supra; Twine v. Carey,* 2 Okla. 250, 37 Pac. 1096; *Wilborne v. Baldwin,* 5 Okla. 265, 47 Pac. 1045; *Thornton v. Peery,* 7 Okla. 442, 54 Pac. 649; *Paine v. Foster,* 9 Okla. 213, 53 Pac. 109; Mansf. Dig. sections 4917, 4918, 4929, 5106; *Ivey v. Drake,* 36 Ark. 228; *Trulock v. Taylor,* 26 Ark. 54.

Let this cause be reversed, with instructions to the lower court to proceed in accordance with the opinion of this court.

All the Justices concur.