## * Ross v. Stewart.

### No. 349.   Opinion Filed January 25, 1910.

#### (106 Pac. 870.)

1.  INDIANS—Town Lots—Jurisdiction of Town-Site Commissioners.  The town-site commissioners of the Cherokee Nation were tribunals having exclusive original jurisdiction over the contests between claimants to town lots in that part of the Indian Territory.

2.  SAME—Patent From Commissioners—Attack in Court of Equity. A patent issued by such tribunal is impervious to attack in a court of equity, unless the commission was induced to issue it to the wrong party by an erroneous view of the law, or by a gross or fraudulent mistake of the facts.

3.  PUBLIC LANDS — Officers — Decision on Controverted Facts —Conclusiveness.  When officers of the land office decide controverted questions of fact, in the absence of fraud, imposition, or mistake. their decisions on those questions are final, except as they may be reversed on appeal in that department.

*Appealed to the Supreme Court of the United States.

4.  **INDIANS—Town Lots—Action to Establish Trust — Sufficiency of Petition.** A petition, filed in a court of equity for the purpose of having the holder of a patent to a town lot in one of the towns of the Cherokee Nation declared the trustee for an adverse claimant, should only be held sufficient when the facts upon which relief is prayed are clearly and fully stated.

(Syllabus by the Court.)

*Error from District Court, Sequoyah County; J. H. Pitchford, Judge.*

Action by Charles L. Ross against Minerva Stewart. A demurrer to the petition was sustained, and plaintiff brings error. Affirmed.

*W. H. Kornegay,* for plaintiff in error.—Citing: *Leak v. Joslin,* 20 Okla. 200; *Brooks v. Garner,* 20 Okla. 236; *Wallace v. Adams,* 143 Fed. 720.

*Jess W. Watts,* for defendant in error.—Citing: *Woods v. Carpenter,* 101 U. S. 807; 3 Ballard on Race Property, pp. 700-706; *Durango Land & Coal Co. v. Evans,* 80 Fed. 425; *Twine v. Carey,* 2 Okla. 249; *Wilborn v. Baldwin,* 5 Okla. 265; *Thornton v. Perry,* 7 Okla. 441; *Payne v. Foster,* 9 Okla. 213; *Johnson v. Towsley,* 20 L. Ed. (U. S.) 485; *U. S. v. Maxwell Land Grant Co.,* 121 U. S. 946.

KANE, C. J. The only assignment of error in this case is to the effect that the court below erred in sustaining the general demurrer to the amended petition of the plaintiff in error, plaintiff below.

The amended petition is in words and figures as follows:

"Plaintiff by leave of court for amended petition says: That he is a citizen by blood of the Cherokee Nation, and was such citizen during all the times hereinafter mentioned, and the defendant, Minerva Stewart, was not a citizen of said Nation at any time, and that she resides in Sequoyah county, and the land involved in this suit lies therein, and is lot 7 of block 39 in the town of Sallisaw. That said lot lies in the town site laid off by the Secretary of the Interior, and is a lot that was purchasable in the provision of section 43 of the Cherokee treaty of the year 1902. That at time of passage of said treaty, and at the time of the

appraisement of town lots in said town, this plaintiff was in the undisputed possession of said lot, and owned the improvements thereon, and had been in such possession for and had such ownership nearly a year prior to the adoption of said treaty, and continually thereafter to the present time, and that the improvements on the lot were valuable, and consisted of a two-roomed dwelling house, fencing, and outbuildings of the value of $500. That on the 30th day of October, 1903, this plaintiff made application to the town-site commission for the town of Sallisaw, Cherokee Nation, to have the said lot listed and appraised and scheduled to him, and it was accordingly listed, appraised, and scheduled to him. That thereafter, on October 30, 1903, the defendant Minerva Stewart, made application to have said lot scheduled to her, in said application representing that she was in possession of said lot, which representation was untrue, and also represented in said application that she owned the right of occupancy of said lot, which representation was untrue. That her application was refused, and that thereafter, on the 9th day of May, 1905, she filed with the town-site commission or the Indian inspector a complaint in contest against this plaintiff, alleging that at the time of the filing of this complaint she owned said lot, which allegation was untrue, and alleging also that she was entitled to possession of said lot, which allegation was untrue, and alleged further, that on January 13, 1900, she was married to John S. Stewart, deceased, and at said time he owned and was in possession of said lot, and had built on said lot a dwelling house, dug a well, and erected other improvements, all being of the value of $500. That in fact, at such time said John S. Stewart did not own any of the improvements, and did not own the lot and the occupancy of such improvements, and the lot by him was held under Martha A. Snow, plaintiff's grantor, in the capacity of tenant to said Martha A. Snow, and in said contest it was further alleged that said John S. Stewart died February 16, 1901, and that the contestant occupied the premises until about the year 1903, and it was further alleged in said contest complaint that the plaintiff herein was holding the premises without authority from the contestant, and that contestant owned the same. That the allegation as to her individual ownership was not true. That at said time the plaintiff was imprisoned in the United States jail at Vinita, and notice of such filing, requiring an answer in 10 days, was served upon him therein, and notice was therein accepted by him

over 10 days before his discharge, and that upon receipt of said notice he employed J. G. McCombs, attorney, of Sallisaw, Ind. T., regularly licensed to practice in the United States courts in the Indian Territory, and regularly licensed to practice in the Interior Department, and actively engaged in practice before said courts and before said department, and that he turned over to said attorney all his papers connected with said matter, and he paid said attorney for his services, and was assured by said attorney that all things necessary to protect plaintiff's rights would be done, and from time to time thereafter he was assured by said attorney that the necessary pleading had been filed, and the contest would be later held, and the evidence of both parties would be heard. That on the 21st day of June, 1906, he tendered to the United States Indian agent of Muskogee, J. Blair Schoenfelt, the full amount of the payment that would be due from him to the Cherokee Nation for said lot, and said payment was credited by said Indian agent on the 26th day of June, 1906, and was later refused because the lot was in litigation, and said money was held for some time, and finally returned to await the result of the litigation. That again on June 3, 1907, a tender was made and refused because the lot was, by the Indian agent, alleged to be in litigation, and later tender was made in person by this plaintiff to said Indian agent, and the same refused because property had been awarded to the defendant, Minerva Stewart, as alleged by said Indian agent. That in February, 1907, plaintiff's said attorney made inquiry of the Indian inspector for the Indian Territory concerning said contest, and was informed that the lot was in litigation, and he would be advised as soon as action was taken, and that later in said month, on inquiry of said inspector, he was informed by him that, because defendant did not within 10 days of service of the complaint in contest file answer thereto, he forfeited all claims to the property, and that it was the intention of the officer to render formal decision relative to his rights after the first of the succeeding month. That under the rule prescribed by the Secretary of the Interior it was necessary to serve the plaintiff or his attorney with a copy of his decision after its rendition, and of his right to appeal. That no notice was ever given to plaintiff or to his attorney of the rendition of such decision, though plaintiff is informed that on October 8, 1907, patent was approved to Minerva Stewart to said lot. That the said Minerva Stewart never owned any improvements on said lot, and was not

in possession in any form of said lot at the time of the filing by plaintiff, or thereafter. Further, that she was dispossessed by the United States marshal in the year 1902, about May 5th, and that prior to said time she was never in possession except as the wife of John S. Stewart, whose possession during the time she was his wife was that of a tenant of Martha Snow, hereinafter mentioned. That on the 5th day of May, 1902, in a certain suit No. 837, wherein said Minerva Stewart was plaintiff and said Martha A. Snow was defendant, pending in the United States court for the Northern district of the Indian Territory, at Wagoner, a judgment was given and rendered by the United States court aforesaid in favor of Martha Snow and against the said Minerva Stewart, for the recovery of the improvements and the lot involved therein, and by said judgment the claim of said Minerva Stewart to said lot was forever barred. That about the close of the year 1902, the plaintiff succeeded to all the rights of Martha Snow to said lot and improvements, and she made him a bill of sale thereto, but it has been lost, and the copy thereto is not set out. That at said time said Martha Snow owned the improvements. That in the suit aforesaid, concerning the said lot and improvements, the title of Martha Snow was deraigned from the John S. Stewart mentioned in the contest hereinafter referred to under conveyance of November 16, 1899, and all these things were well known to the defendant at the time of the institution of the contest. That the plaintiff is informed and believes that his said attorney had in due time filed with the townsite commission and the Indian inspector an answer to the contest proceedings, stated by the defenses of the plaintiff thereto, but the record of the case does not show this, and said answer cannot be found in the files, but all parties thereto prior to the notification in February, 1907, acted on the assumption that a day would be set for the hearing and the evidence of all parties introduced. The plaintiff stands ready and willing to pay defendant any amount she may have paid that this plaintiff should have paid to the Cherokee Nation for the title to said lot, together with the legal interest thereon, if on the hearing it shall be ascertained that there is anything due her. That by reason of the misrepresentation of the defendant as aforesaid, and by reason of the fact that plaintiff's attorney either failed to file an answer in the contest proceedings, or that said answer, having been filed, was disregarded by the Indian inspector or the town-site commission, and by reason of the action of the Indian inspector in mis-

leading the plaintiff, and by reason of plaintiff believing that his defense was actually filed, this plaintiff did not take further steps to prevent the patent from being issued to the defendant. And for the further reason that he had no notice whatever that the Indian inspector or the town-site commission had ever rendered any judgment forfeiting his rights until the patent was actually issued. That under the complaint in contest the officers of the Interior Department were not authorized to set aside the scheduling to the plaintiff of the lot. That said complaint did not show that the defendant, Minerva Stewart, was entitled to said lot under the law, and said officers under said complaint had no authority to judge that she was so entitled, or to cancel the scheduling of said lot to said plaintiff, and under the showing made the said officers had no right to issue a patent to the defendant, Minerva Stewart, and the said Minerva Stewart well knew that she had no right to receive same. That the officers of the Interior Department had no right by law to forfeit plaintiff's right to said lot, and to schedule lot to defendant without hearing. That by reason of the mistakes of said officers, and by reason of the plaintiff being misled, and by· reason of the disappearance from the files, or failure of plaintiff's attorney to file answer, and by reason of the fact that improvements on the lot belonged to the plaintiff at the time of the passage of the Cherokee treaty, and by reason of the fact that he was in the undisputed possession of them at said time, as well as at all times thereafter, this plaintiff is the equitable owner of the land in question, and in equity and good conscience the legal title to said land belongs to the plaintiff, and not to the defendant, Minerva Stewart, who has procured a patent therefor in the manner hereinbefore recited; and, the premises considered, the plaintiff asks that the title of the defendant be decreed to belong to the plaintiff, and that the defendant be required to make a deed to the plaintiff of the lot in controversy, and that in the event this is not done, a decree be entered vesting the legal title to the lot in the plaintiff, and divesting the defendant of the title thereto, and that the plaintiff do have and recover his costs herein laid out and expended, and that the plaintiff do have all other and further relief, to which in equity and good conscience he may be entitled."

All the parties seem to agree upon the law of the case, and only differ upon its application. The case of *Wallace et al. v. Adams et al.*, 143 Fed. 716, 74 C. C. A. 540, states the rule ap-

plicable to such cases with as much precision and accuracy as any called to our attention, in the following language:

"The Commission (speaking of the Dawes Commission) under the direction of the Secretary constitutes a special tribunal, vested with the judicial power to hear and determine the claims of all parties to allotments of these lands, and to execute its judgments by the issue of the allotment certificates, which constitute conveyances of the right to the lands to the parties whom it decides are entitled to the property. This tribunal undoubtedly has exclusive jurisdiction to determine such claims and to issue such conveyance. The allotment certificate, when issued, like a patent to land, is dual in its effect. It is an adjudication of the special tribunal, empowered to decide the question, that the party to whom it issues is entitled to the land, and it is a conveyance of the right to this title to the allottee. *U. S. v. Winona & St. Peter R. Co.,* 15 C. C. A. 96, 103, 67 Fed. 948, 955. Like a patent, it is impervious to collateral attack. But, as in the case of a patent, if the Commission or the Secretary has been induced to issue the allotment certificate to the wrong party by an erroneous view of the law, or by a gross or fraudulent mistake of the facts, the rightful claimant is not remediless. He may avoid the decision, and charge the legal title to the lands in the hands of the allottee, as he may that of the grant to a patentee, with his equitable right to it, either on the ground that upon the facts found, conceded, or established without dispute at the hearing before the special tribunal its officers fell into an error in the construction of the law applicable to the case, which caused them to refuse to issue the certificate to him, and to give it to another, or that through fraud or gross mistake it fell into a misapprehension of the facts proved before it which had a like effect. *James v. Germania Iron Co.,* 46 C. C. A. 476, 479, 107 Fed. 597, 600."

We do not understand that the cases of *Leak et al. v. Joslin,* 20 Okla. 200, 94 Pac. 518, and *Brooks v. Garner,* 20 Okla. 236, 94 Pac. 694, 97 Pac. 995, extend the rule announced by the federal court. The syllabus to *Leak et al. v. Joslin, supra,* reads as follows:

"When town-site commissioners, by virtue of an act of Congress otherwise known as the 'Supplemental Creek Agreement' (March 1, 1901, c. 676, 31 Stat. 861), where there is no conflict as to the

facts, but by a misconstruction of the. law as applied to the facts, schedule a lot to a party who is not entitled to the same under the law, after title has passed to a private party, courts of equity will inquire as to whether or not such title shall be held as trustee for the party really entitled to same."

Under the foregoing authorities, unless the town-site commission was induced to issue its patent to the lot in controversy to the wrong party by an erroneous view of the law, or by a gross or fraudulent mistake of the facts the demurrer to the petition was properly sustained. The error of law committed by the town-site commission, if any, is not specifically pointed out by counsel for plaintiff in error in his brief, and a careful examination of the petition fails to disclose facts upon ˙which such error can be predicated, nor are there to our mind sufficient facts alleged to charge the town-site commission with having issued the patent to the wrong person through a gross and fraudulent mistake of the facts. The petition alleges, in substance, that before the time the contest was filed before the town-site commissioners, the contestee was imprisoned in the United States jail at Vinita; that notice was accepted by him, and he employed an attorney, and turned over to said attorney all his papers connected with the matter, and he was assured by said attorney that all things necessary to protect his rights would be done; that his attorney made inquiry of the Indian inspector concerning the contest, and was informed that the lot was in litigation, and later he was informed by him that, because defendant did not within 10 days of service of the notice of contest file answer thereto, he had forfeited all claim to the property, and that it was the intention of the commission to render formal decision relative to his rights after the first of the succeeding month. Then follow allegations to the effect that, by reason of the misrepresentation of the defendant, and by reason of the fact that plaintiff's attorney either failed to file an answer in the contest proceedings, or that said answer, having been filed, was disregarded by the Indian inspector or the town-site commission, and by reason of the action of the Indian inspector in misleading

the plaintiff, and by reason of plaintiff believing that his defense was actually filed, this plaintiff did not take further steps to prevent the patent from being issued to the defendant. Such allegations do not bring the case within the second ground upon which a patent may be attacked collaterally, to wit, that its issuance was induced by gross and fraudulent mistake of facts. The alleged negligence of his counsel in failing to file his answer within the time prescribed, if such was the case, does not warrant the interference of a court of equity in his behalf, in the face of the decision of the town-site commission.

"Before a court of equity will intercede to· declare the holder of the legal title a trustee for an adverse claimant, such adverse claimant must show in his bill for relief that he has availed himself of all the right before the land department officials, and that he has performed every requirement of the law and rules regulating the acquiring of title applicable to the land he claims; and he cannot set up his own laches, neglect, mistake, or inadvertence as an excuse for a failure to comply with the law, unless such default was brought about by the fraud, wrong, or misconduct of his adversary." (3 Ballard on the Law of Real Property, § 588; *Twine v. Carey,* 2 Okla. 249, 37 Pac. 1096.)

The petition does not state any facts sufficient to inform the court what misrepresentations there were, ·if any, on the part of the defendant in error or the town-site commission that misled him to his injury. He does not allege that the inspector told the plaintiff in error that he disregarded his answer, if in fact he filed it, or that he only considered the contestant's evidence in awarding the lot, but rests upon the broad statement that the Indian inspector misled him. Such allegations as "Thereafter on October 30, 1903, the defendant, Minerva Stewart, made application to have said lot scheduled to her, in said application representing that she was in possession of said lot, which representation was untrue; and also represented in said application that she owned the right of occupancy of said lot, which representation was untrue," and "that the allegation as to her individual ownership was untrue," etc., all raise questions of fact that should have been tried before the town-

site commission, and the town-site commission's findings thereon, unless induced by a gross or fraudulent mistake of the facts, are final.

"When officers of the land office decide controverted questions of fact, in the absence of fraud, imposition, or mistake, their decisions on those questions are final, except as they may be reversed on appeal in that department." (*Johnson v. Towsley*, 13 Wall. 72, 20 L. Ed. 485.)

The case of *Durango Land & Coal Co. v. Evans et al.*, 80 Fed. 425, 25 C. C. A. 523, discusses practically all the questions raised in the case at bar. In that case Judge Thayer, who delivered the opinion of the court, uses the following language:

"The allegations in the bill respecting these proceedings in the land department are very vague and unsatisfactory. 'The bill simply advises us that Evans filed an affidavit in the local land office at Leadville on June 27, 1892, charging that the entry by McMaster was not made for his own use, and that he (Evans) subsequently obtained a patent for the land in controversy. The further course of the proceeding before the land department, after the affidavit was filed, is not described with any detail or certainty, and but for a casual allusion made in the brief of counsel for the appellant, to a decision rendered by the Secretary of the Interior, we should be in doubt whether the contest ever reached the Secretary, or was terminated by the decision of some inferior officer of the land department. Enough appears, however, to justify us in presuming, as against the complainant company, that a contest was duly inaugurated by Evans against said company; that it had due notice of Evans' claims and opportunity to defend; that it did defend; that the contest ran its course in the prescribed way through the department until it reached the Secretary of the Interior; and that a patent was ultimately awarded to Evans. Viewed in this aspect, the case at bar is one in which the complainant seeks to set aside and impeach the judgment of the land department; and the doctrine is too well settled to admit of any controversy that the decisions of that tribunal upon questions properly pending before it can only be annulled when such fraud or imposition is shown to have been practiced as prevented the unsuccessful party in a contest from fully presenting his case, or the officers composing the tribunal from fully considering it, or when such officers have themselves

been guilty of fraudulent conduct, or when it is made to appear that, upon the case established before the land department, the law applicable thereto was misconstrued or misapplied. If fraud is charged as ground for annulling a decision of the land department, it is not enough that false testimony or forged documents have been employed; but it must be made to appear that such false testimony has affected the decision, and led to a result which otherwise would not have been reached. And inasmuch as the findings of the land department on questions of fact are conclusive, when the charge is that the land department has erred in the decision of a mixed question of the law and fact, what the facts were, as laid before and found by the department, must be shown, so as to enable the court to see clearly that the law has been misconstrued. These propositions have been so frequently stated and applied that it is hardly necessary to repeat them. *Lee v. Johnson,* 116 U. S. 48, 50, 6 Sup. Ct. 249 [29 L. Ed. 570]; *Quinby v. Conlan,* 104 U. S. 420, 426 [26 L. Ed. 800]; *Marquez v. Frisbie,* 101 U. S. 473, 476 [25 L. Ed. 800]; *Vance v. Burbank,* 101 U. S. 514, 519 [25 L. Ed. 929]; *Smelting Co. v. Kemp,* 104 U. S. 636, 640 [26 L. Ed. 875]; *Moore v. Robbins,* 96 U. S. 530 [24 L. Ed. 848]; *Shepley v. Cowan,* 91 U. S. 330, 340 [23 L. Ed. 424]; *Johnson v. Towsley,* 13 Wall. 72 [20 L. Ed. 485]; *Sanford v. Sanford,* 139 U. S. 642, 11 Sup. Ct. 666 [35 L. Ed. 290]."

The opinion concludes:

"No decision by the land department would have any weight, or afford any protection to a successful litigant in that department, if, without any statement of what the facts were as presented to the department, the whole controversy could be opened in the court by general allegations, such as are found in the present bill, that the successful litigant had exhausted his right to enter land, or was otherwise disqualified, or had abandoned his entry. These are matters which were properly cognizable before the land department when the contest was pending. The presumption is that all such questions were brought to the attention of the department, and were duly considered and properly decided. The burden was on the complainant, therefore, when it sought to reopen the controversy for errors of law, to show what the facts were before the land department to which the law was applied. We are forced to

conclude that, by the averments of the present bill, this burden was not successfully discharged."

The pleading demurred to in the foregoing case is set out in full in the opinion of the court, and resembles the petition herein in a great many particulars. Both pleadings contain a good deal of vigorous declaration, but both are wanting in the averment of facts which are indispensable to give them sufficiency as pleadings for the purpose intended.

"The respect due to a patent, the presumptions that all the preceding steps required by the law had been observed before its issue, the immense importance and necessity of the stability of titles dependent upon those official instruments, demand that the effort to set them aside, to annul them, or to correct mistakes in them, should only be successful when the allegations on which this is attempted are clearly stated and fully sustained by proof." (*Maxwell Land-Grant Case,* 121 U. S. 325, 7 Sup. Ct. 1015, 30 L. Ed. 949.)

In *Tynon v. Hall et al.,* 22 Okla. 684, 98 Pac. 895, it was held that the town-site commissions of the Cherokee Nation were tribunals having exclusive jurisdiction over contest between claimants to town lots in that part of the Indian Territory.

Judgment of the court below is affirmed.

All the Justices concur.