## ACTON v. CULBERTSON *et al.*

No. 1904.    Opinion Filed March 11, 1913.

Rehearing Denied June 10, 1913.

(132 Pac. 812.)

1.    PLEADING—Judgment on the Pleadings. Where the petition states facts sufficient to constitute a cause of action and, aside from the general denial interposed, the answer admits facts sufficient to entitle plaintiff to recover, a judgment for plaintiff on the pleadings is proper.

2.    ADVERSE POSSESSION—Entry Under Owner—Knowledge of Hostility by Owner. Where the entry of defendant upon land is permissive and in privity with the title of the owner of the possessory right thereto and that of his grantee, in order to enable defendant to avail himself of the statute of limitations he must plead such specific acts of disloyalty to the title or acts of dominion giving adverse character to his possession as will preclude all want of knowledge thereof on the part of the owner. It is not sufficient that the defendant set forth his mere mental intention to hold adversely, or the conclusions of law that since a certain time his possession was "lawful, hostile under claim of right, actual, exclusive, and continuous."

3. **PUBLIC LANDS—Town-Site Commission—Issue of Patent.** Answer and cross-petition examined, and held that the same fails to state facts sufficient to charge the town-site commission with having issued patent to the lot in controversy to the wrong person as a result of an erroneous view of the law or through gross and fraudulent mistake of facts.

4. **PLEADING—Motions to Strike—Redundancy.** Where the answer and cross-petition states facts sufficient to warrant a recovery of exemplary damages, they need not be claimed by name and as such, but may be recovered under a claim for damages generally, and where, in the **ad damnum**, they are claimed generally and in a sum certain, and exemplary damages, as such, in a sum certain are also claimed, a motion to strike the latter item was properly sustained under Comp. Laws 1909, sec. 5659 (Rev. Laws 1910, sec. 4770).

(Syllabus by the Court.)

*Error from District Court, Hughes County;*
*John Caruthers, Judge.*

Action by John J. Culbertson and others against Emily E. Acton and others. Judgment for plaintiffs, and defendant Acton brings error. Judgment of trial court affirmed, but cause reversed on cross-petition, with leave to amend.

*L. S. Fawcett,* for plaintiff in error.
*Warren & Miller,* for defendants in error.

TURNER, J. On July 15, 1909, J. J. Culbertson, one of the defendants in error, in the district court of Hughes county, sued Emily E. Acton and others in ejectment for lots 13, 14, 15, and 16, in block 43, in the city of Holdenville. On August 7, 1909, said defendant answered and disclaimed any interest in the property, save in lot 13, to which she claimed an equitable title, admitted the legal title to be in plaintiff, and that she was in possession thereof, but denied that plaintiff was entitled to possession. By way of amended answer and counterclaim, defendant, after alleging that pending this suit said city had acquired from plaintiff some alleged interest in the lot which was junior to hers and asking that it be made a party to the suit and required to defend against her cross-action, further alleged, in substance, that

in April, 1899, she took possession of the lot, which was in a common inclosure with lots 14, 15, and 16,' subordinate to the title of D. N. Kelker, and that pursuant to an understanding with him she put up a small store building thereon and occupied the same as a millinery shop, rent free, until such time as he should demand possession thereof, when it was understood that she would surrender possession thereof to him; that she had never been requested so to do or pay any rent therefor; that about December 11, 1900, said Kelker executed to plaintiff, for value, a quitclaim deed to said lot, which was duly recorded June 3, 1901, and "from that time to the bringing of this suit the possession of said lot by defendant, as against said Kelker and this plaintiff, was lawful, hostile, under claim of right, actual, exclusive, and continuous." She further alleged that on February 1, 1902, defendant, still being in possession thereof, made application to the town-site commission that said lot be scheduled to her, she being then, as now, ready, able, and willing to comply with all the provisions of law in such case provided; that on February 3, 1902, plaintiff made like application that said lots 13, 14, 15, and 16 be scheduled to him; that his application was made with intent to deceive said department, and falsely alleged that plaintiff was then rightfully in possession of and owned the right of occupancy in and to all four of said lots; that at that time plaintiff did not live in Holdenville nor was he at that time a resident in the Indian Territory, by reason of all of which she says plaintiff was not in legal possession of said lot and had no right to have the same scheduled to him, and hence the act of the Secretary of the Interior in subsequently scheduling and patenting said lots to him was done by error and mistake of law; that by the failure of said Kelker or plaintiff to demand possession of said lot prior to said quitclaim to plaintiff they are estopped from claiming any interest in lot 13 adverse to her; that at the time she took possession of said lot said Kelker fraudulently represented to her that he held the legal

possession of said ·lot, which she believed; that in truth he had no lawful right of possession thereto; that at the time he made like claim to a great many other resident and business lots in said town, a large number of which were allotted to him, and that under the law he could acquire but one residence and one business lot, and that, as the patent to plaintiff of said four lots was issued ·and delivered by reason of said false and fraudulent acts and representations of Kelker and plaintiff, the same was issued and delivered to plaintiff by mistake of law, of all of which she said she had no knowledge until in the year 1909. For further answer she substantially states that she has "been in the open, notorious, actual, continuous, and adverse possession· of said lot under claim of right for more than seven years next preceding the filing of this suit," which was the statute of limitations of Arkansas in force in that jurisdiction at that time,· and which she says began to run from February ·1, 1902, the date she made application to have the lot scheduled to her. She further states that the respective claims made to said lot by plaintiff and defendant ·in their contest therefor before the Interior Department were, on his part, that he had acquired the right of possession thereto by bill of sale from Kelker, who had acquired the same from one Jacobs, a citizen of the Creek Nation; that defendant was a tenant of Kelker's, and that defendant was estopped to deny the title of her landlord; that these allegations were generally denied by her, and that she alleged her occupancy of the lot to be a temporary license, rent free, and subject to re-entry by said Kelker; that .no demand or notice for possession had ever been made, and that since the passage of the Creek treaty, as amended in 1902, she had been in rightful possession thereof within the contemplation of said act and claimed the benefit thereof for the purpose of obtaining title to said lot; that she was ready to pay the government therefor and then and there tendered the amount necessary to obtain the same. She further alleged in said contest that plaintiff had taken the conveyance from Kelker

with knowledge of her possession; that the same was not in good faith, and that the relation of landlord and tenant never existed between her and Kelker or between plaintiff and defendant to said lot; that said contest was decided in favor of plaintiff and against defendant and affirmed by the Commissioner of Indian Affairs and again affirmed by the Secretary of the Interior about December 6, 1905, and patent issued to him June 19, 1909; that the same was issued by error and mistake of law, and that the evidence in said contest disclosed no relation of landlord and tenant, as claimed; that if the same existed it was terminated by operation of law by the deed from Kelker to plaintiff and by the passage of the act aforesaid; and for the further reason that at the time of the making of said deed her possession of the lot, never having been questioned by Kelker or plaintiff, under said act rightfully vested in her a prior and superior equity and the right to acquire legal title thereto. She again pleaded a tender of the amount expended by plaintiff on said lot, with interest, and prayed that he be declared to hold the legal title for her, and that on the payment by her of his legal disbursements he be required to execute a deed conveying the same to her. Later by amendment she alleged, with much aggravation, an ouster by plaintiff and the city, his alleged grantee *pendente lite,* and prayed $1,000 actual and $940 punitive damages, filed the same as a "cross-bill," and later, as another amendment to her answer, filed all the papers involved in said contest over the lot, including the testimony taken on the hearing. After that part of the *ad damnum* in her "cross-bill" praying exemplary damages had been stricken, and much other unnecessary pleading and reply filed, there was judgment for plaintiff on the pleadings, and defendant brings the case here, alleging this action as error.

There is no merit in the contention that defendant was entitled to go to a jury on account of her general denial. This for the reason that the petition states facts sufficient to constitute a cause of action, and the answer, aside from the

general denial, admits facts sufficient to entitle plaintiff to recover. *Yoder v. Randol & Nix,* 16 Okla. 308, 83 Pac. 537, 3 L. R. A. (N. S.) 576.

There is no merit in defendant's plea of the statute of limitation. The same, in effect, recites that she entered into possession of the lot by leave of Kelker, a noncitizen, holding a bill of sale which, we say, conveyed to him the right of possession thereto from one Jacobs, a citizen; that by said leave she built a store thereon and continued to occupy the same rent free; and that possession was never demanded of her either by Kelker or plaintiff, his grantee, "and from that time to the bringing of this suit the possession of said lot by defendant against said Kelker and this plaintiff was lawful, hostile under claim of right, actual, exclusive, and continuous." This for the reason that having originally taken possession in subordination to the title thus conveyed by Jacobs to Kelker, in order to constitute adverse possession, there must be a disclaimer of his title, or later the title of plaintiff, his grantee, with which the possession · of defendant is also presumed to be consistent, and actual hostile possession of which the owner of the title had notice or which is so open and notorious that such will be presumed.

In *Alexander v. Wheeler,* 69 Ala. 332, the court in the syllabus said:

"Where the entry upon land is merely permissive, being allowed under a mere license from the true owner as matter of favor, possession under it can become adverse only by clear, positive, open and continuous assertion of title, hostile to the true owner, and actually or constructively brought to his knowledge."

In *Zeller's Lessee v. Jacob K. Eckert et al.,* 4 How. 289, 11 L. Ed. 979, in the syllabus it is said:

"Where the original possession by the holder of land is in privity with the title of the rightful owner, in order to enable such holder to avail himself of the statute of limitations, nothing short of an open and explicit disavowal and disclaimer of holding under that title, and assertion of title in himself brought home to the other party, will satisfy the

law.   The burden of proof is on the holder to establish such a change in the character of the possession.   The statute does not begin to run until the possession becomes tortious and wrongful by the disloyal acts of the tenant which must be open, continued, and notorious, so as to preclude all doubt as to the character of the holding, or the want of knowledge on the part of the owners."

And the answer must set forth such specific acts of disloyalty to the title, or acts of dominion giving adverse character to the possession, as will preclude all want of knowledge on the part of the owner thereof.   It is not sufficient that the pleader set forth, as here, her mere mental intention so to hold or the conclusion of law that since a certain time her possession was "lawful, hostile, under claim of right, actual, exclusive, and continuous."

In *Hardman v. Ellames,* 5 Sim. 640, the court said:

"It is, I think, incumbent on a defendant, who means to plead an adverse possession, so to state the circumstances that the plaintiff may know what facts he is to prove when he is afterwards required to meet the truth of the plea."

In *Comstock v. Eastwood,* 108 Mo. 41, 18 S. W. 39, the court said:

"If the possession in its inception was friendly, then it could not be converted into one of hostility by mere mental intention.   Some notice or act indicative of an intent to disseise was necessary.   *Spencer v. Oneill,* 100 Mo. 49 [12 S. W. 1054]; *Campbell v. Gas Co.,* 84 Mo. 352."

In *Lick v. Diaz et al.,* 30 Cal. 65, the facts were that the Alcalde made a deed granting the lot in controversy to one Juan Prado Mesa and one Diaz and afterwards certified thereon that the former had renounced his right thereto and that said lot had become the property of Diaz.   Thereafter the heirs of said Mesa sued for partition of the lot, whereupon plaintiff, deraigning his title from Diaz, brought suit against them to obtain a decree enjoining them from further prosecuting said action, in which they claimed an undivided one-half interest therein and prayed that he be adjudged and decreed the lawful owner as against said heirs, and that they be decreed to

have no right or title thereto. Reversing a judgment for plaintiff, the court said:

"The plaintiff set forth in his complaint specifically the facts upon which he relied as showing his right to relief. These facts consist of the grant alleged by him to have passed the title to the property in entirety to Diaz, and the conveyance by Diaz to Le Page, and the conveyance by Le Page to the plaintiff, and, following upon this, his alleged 'actual, undisputed, open, and notorious possession of said premises, and every part and parcel thereof, without any interference or molestation whatever on the part of Juan Prado Mesa or his heirs.' The complaint does not state facts from which it affirmatively appears that the plaintiff's possession was of an adverse or hostile character. It may, for aught that appears in the complaint, have been only according to his right, and in support of the title in common. In answer to the complaint the defendants say they never had any notice or information that the plaintiff ever claimed the exclusive ownership or possession of the property adversely to the right of the defendants, until he disclosed such claim in his answer in the partition suit mentioned in the complaint. It is manifest from the complaint the plaintiff staked his right to the relief which he sought upon the title which he claimed vested the property in entirety in Diaz by the grant of the Alcalde, and his own acquisition of that title and possession of the property under it. The complaint does not show that he relied upon a disseisin or ouster of his cotenants of the freehold, as a foundation of title to the undivided half of the premises; and we think it would be extending the rule of indulgent and liberal construction of pleadings to an extent defeating the ends of justice to hold that the pleadings in this case raised an issue of title in the plaintiff, having its origin and continuance in an ouster of the defendants, and an adverse possession of the property by the plaintiff for the period of five years before action brought."

And in the syllabus said:

"A party relying upon an adverse possession of five years of land owned by himself and the adverse party as tenants in common must allege by pleading facts from which it will affirmatively appear that his possession was of an adverse and hostile character; otherwise his possession of the land, though

exclusive, will be deemed to be according to his right and in support of the title in common."

*McCloskey et al. v. Barr et al.* (C. C.) 38 Fed. 165, was a bill for partition and accounting. The hearing was on the sufficiency of the pleas which were that defendants "at the time of the bringing of this suit, and long prior thereto," were and still are "in the open, notorious, continuous, and exclusive possession of said premises as the sole owner thereof and claiming and holding adversely to complainants and the whole world," which were held by the court to be bad as consisting of conclusions of law. See, also, *Clarke v. Hughes,* 13 Barb. (N. Y.) 147.

In *Dikeman v. Parrish,* 6 Pa. 210, 47 Am. Dec. 455, the court said defendant's acts of dominion giving adverse character to a possession are leasing, devising, and conveying the land, making valuable improvements, receiving issues and profits, etc. See, also, *Chalfin v. Malone,* 9 B. Mon. (Ky.) 496, 50 Am. Dec. 525.

We are therefore of opinion that the plea fails to state facts sufficient to start the running of the statute in favor of defendant from April, 1889, the date of her entry under Kelker, or from December 11, 1900, the date of his transfer to plaintiff, or from February 1, 1902, the date of her application to have the lots scheduled to her, or from any other date. Neither does the answer set forth facts sufficient to induce us to believe that the commission scheduled this lot and issued patent thereto to the wrong party as the result of an erroneous view of the law, as contended. This for the reason that, as we have just held, her possession was that of Kelker and his subsequent grantee, the plaintiff, and not her own and adverse thereto, as there and here contended; being plaintiff's possession, we say, at the time he applied to have the lot scheduled to him, he was entitled thereto under the so-called Original Creek Agreeemnt, sec. 13, which reads:

"Any person holding lands within a town occupied by him as a home, also any person who had at the time of signing

this agreement purchased any lot, tract or parcel of land from any person in legal possession at the time shall have the right to purchase the lot embraced in same by paying one-half of the appraised value thereof, not, however, exceeding four acres."

This was, in effect, the holding of the commission, which found:

"Upon a thorough examination of the testimony of contestee, and her son Willie, it is clearly shown that she had no right of title to the lot in question, and I deem that the said contestee, Emily A. Acton, was permitted to use the said land by the kindness of the said Kelker, and that after she (the said Acton), one of the contestees herein, tried to hold said land by usurpation rather than by prescription. * * * Such action will not be upheld or even countenanced by this department, and she will take nothing by her action herein."

We might further consider other supposed "erroneous views of the law" entertained by the commission but for the fact that we are unable to gather from the briefs what views of the commission are assailed. Neither are there, to our mind, sufficient facts alleged in said answer to charge the commission with having issued the patent to this lot to the wrong person through a gross and fraudulent mistake of facts. All such should have been set forth specifically to make the answer good as against the demurrer. *Ross v. Stewart,* 25 Okla. 611, 106 Pac. 870, and cases cited.

There was no error in striking out that part of the *ad damnum* of her cross-petition praying exemplary damages against both plaintiff and the city for ousting defendant pending the suit. This was the only objection running to the petition which, going otherwise unchallenged, is, properly we think, conceded to state a cause of action warranting a recovery of such damages. In framing the petition it seemed to be the view of the pleader, in the light of Comp. Laws, sec. 5627 (Rev. Laws 1910, sec. 4737), which reads:

"The petition must contain: * * * Third. A demand of the relief to which the party supposes himself entitled. If the recovery of money be demanded, the amount thereof shall be stated, * * *"

Vol. 38—19.

—that it would be proper, in claiming damages, to lay them in his *ad damnum* specially, which he did in different amounts. In sustaining the motion to strike this item the court, in effect, held, as the facts alleged were sufficient to warrant a recovery of punitive damages, that such need not be specially claimed, but might be recovered under a general allegation of damages, and that this was a redundant and immaterial allegation, and accordingly sustained the motion to strike under Comp. Laws 1909, sec. 5659 (Rev. Laws 1910, sec. 4770), which reads:

"If redundant or irrelevant matter be inserted in any pleading, it may be stricken out, on motion of the party prejudiced thereby. * * *"

The court was right. 13 Cyc. p. 177, says:

"While it is essential that the facts alleged and proved be such as will warrant the assessment of punitive or exemplary damages, such damages are not special in the sense that they need ordinarily be claimed *eo nomine* in the complaint, but may be recovered under a claim for damages generally."

In *Shoemaker v. Sonju,* 15 N. D. 518, 108 N. W. 42, 11 Ann. Cas. 1173, the court said:

"The complaint alleged that the injury was inflicted willfully and maliciously, and the jury, had the question been left to them, could properly have presumed that the assault was with malice from the wanton and unprovoked manner in which it was committed. The plaintiff claimed a gross sum of $2,000 as general damages. It was unnecessary to itemize the elements of such damages or to state separately the amounts claimed as actual damages and exemplary damages. 1 Sutherland on Damages, sec. 424; *Shepard v. Pratt,* 16 Kan. 209; *Dooley v. Missouri P. R. Co.,* 36 Mo. App. 381. It is well settled that, where the complaint alleges and the proof shows facts such as will warrant a recovery of exemplary damages, they need not be claimed by name and as such in the complaint but may be recovered under the claim for damages generally. *Hoadley v. Watson,* 45 Vt. 289, 12 Am. Rep. 197; *Alabama G. S. R. Co. v. Arnold,* 84 Ala. 159, 4 South. 359, 5 Am. St. Rep. 354; *Savannah, etc., R. Co. v. Hol-*

*land,* 82 Ga. 257, 10 S. E. 200, 14 Am. St. Rep, 158; *Southern Express Co. v. Brown,* 67 Miss. 260, 7 South. 318, 8 South. 425, 19 Am. St. Rep. 306; *Gustafson v. Wind,* 62 Iowa, 281, 17 N. W. 523; *Davis v. Seeley,* 91 Iowa, 583, 60 N. W. 183, 51 Am. St. Rep. 356. Also 13 Cyc. 177, and cases cited. The plaintiff's claim for damages was unliquidated. It was for the jury to say, under the evidence, what sum should be allowed as actual damages, also whether exemplary damages should be awarded, and, if so, the amount."

We are therefore of opinion that the judgment of the trial court must be affirmed and it is so ordered; but, as the record discloses that defendant is entitled to a trial upon the issues tendered upon her cross-petition, this cause is reversed, not for a new trial, but upon the issues stated, with leave to amend if she so desires.

HAYES, C. J., and KANE and DUNN, JJ., concur; WILLIAMS, J., not participating.