## INDIAHOMA OIL CO. v. THOMPSON OIL & GAS CO. *et al.*

### No. 2581.   Opinion Filed May 13, 1913.

#### (132 Pac. 481.)

**INDIANS—Lease of Lands—Assignment.** Where the petition discloses that the Secretary of the Interior disapproved a lease and afterwards approved the same on condition that plaintiff, pursuant to its agreement, assign to defendant a portion of the leased property, held that, as the petition fails to disclose that the Secretary acted through gross and fraudulent mistake of facts, a demurrer thereto was properly sustained.

(Syllabus by the Court.)

*Error from District Court, Creek County;*
*W. L. Barnum, Judge.*

Action by the Indiahoma Oil Company against the Thompson Oil & Gas Company and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Bishop & Mitchell, W. H. Kornegay,* and *McDougal & Lytle,* for plaintiff in error.
*Preston C. West,* for defendants in error.

TURNER, J.  From a judgment rendered and entered in the district court of Creek county sustaining a demurrer to its petition, Indiahoma Oil Company, a corporation, plaintiff in error, plaintiff below, brings the case here, assigning said action of the court as error.

The petition, after alleging the corporate existence of plaintiff and defendant Thompson Oil & Gas Company, and that Earnest Clayton, a citizen of the Creek Nation, not of full blood, had allotted to him certain lands in Creek county known as the W. ½ of the N. W. ¼ of section 4, the N. E. ¼ of the N. W. ¼ of section 9, and the N. E. ¼ of the N. E. ¼ of section 8, township 7, range 12 east, substantially

states: That on March 30, 1905, said Earnest Clayton, a minor, died seised in fee of said lands, leaving him surviving as his only heirs at law William McKinley Clayton, a brother, Bessie Clayton, a sister, and Charlie Clayton, his father, a noncitizen of the Creek Nation. That in February, 1905, said Charlie was appointed guardian of Bessie and later of William Clayton, and on December 5, 1906, and through the probate court, having jurisdiction thereof, plaintiff purchased a lease on said lands for an agreed bonus of $5,000, as shown by the order and decree of said court thereto attached. That said lease was executed on a department form. That $1,000 of said bonus was paid in cash and a certified check for $4,000 was deposited with the master in chancery. That, in virtue of certain acts of Congress, the Secretary of the Interior promulgated certain regulations to the effect that leases, such as the aforesaid, required his approval, and that said lease was sent him for that purpose. That, while the same was pending before the Secretary, Thompson Oil & Gas Company, Bates B. Burnett, and others conspired together and procured said Burnett to be appointed curator of said William and Bessie Clayton in lieu of said Charlie Clayton, and together with the Thompson Oil Company and others sent to the Secretary a telegram in which he was advised that if said lease was disapproved that said Burnett, as curator, would receive for a lease at a new sale thereof $60,000, which was represented by said Burnett to have that day been tendered him by the Thompson Oil & Gas Company. That thereupon the Secretary disapproved said lease of plaintiff and granted a rehearing, whereupon said Burnett and Rufus B. Thompson caused a certified check for $60,000 to be deposited with the United States Indian Agent at Muskogee, which purported to be a tender from Thompson Oil & Gas Company of that amount in the event a new sale of said lease was ordered, but that said oil company did not have at that time on deposit in the bank issuing said certified check the amount thereof. That

said representation was not made in good faith but was made for the purpose of securing the disapproval of said lease in order to require plaintiff to make terms with said oil company and to hold up the development of said lease and obtain from plaintiff an assignment of a part thereof without consideration. That at that time the lands in the immediate vicinity thereof were being developed for oil and gas which, on account of their proximity to the land in question, would drain it of oil and gas to plaintiff's great damage and the waste of the land. That said oil company was organized by said Rufus B. Thompson and Bates Burnett, who owned practically all of its stock and controlled the same and was a part of a scheme to deprive plaintiff of its property. That pursuant thereto said Thompson procured employment from said Burnett, as curator aforesaid, and colluded with him for the purpose of extorting the property from plaintiff without any intention of securing said lease in the name of said oil company, and without disclosing that said Thompson was acting in behalf of said minors, they fraudulently induced the Secretary to refuse to approve plaintiff's lease until plaintiff had made an assignment to said oil company of 40 acres described therein. That the first time said fraud was discovered was in February, 1910; that on June 28, 1907, the Secretary set aside the disapproval of said lease in writing, as follows:

"The Indian agent for Indian Territory will be immediately instructed to return the lease to the department for further action. The disapproval of the lease will be vacated and the lease will be approved on the following conditions: (a) Messrs. Greenless and Bishop and the Indiahoma Oil Company each to execute in behalf of the minor Indians quitclaim deeds, releasing to said minor Indians all rights, title, and interest whatsoever of said Greenless and Bishop and the Indiahoma Oil Company to the land involved in the lease, except the interest of the Indiahoma Oil Company by virtue solely of the lease; (b) the Indiahoma Oil Company to pay a bonus of $25,000; (c) the Indiahoma Oil Company to ac-

cept formally the approval of the lease on the condition that during the life of the lease there shall be paid to the minor Indians one-eighth instead of one-tenth royalty upon all oil produced from the land covered by the lease; (d) that the Indiahoma Oil Company, or its assignees, will, as promptly as practicable, offset oil wells now or hereafter drilled within 200 feet of the outer boundary of the land involved in the lease; (e) that the Indiahoma Oil Company shall, as per its agreement, made by its attorneys, Lawrence & Gormly, assign to the Thompson Oil & Gas Company that portion of its lease which offsets the S. W. ¼ of the S. W. ¼ of section 4, township 17 north, range 12 east."

That being coerced, as stated, plaintiff made the assignment, without consideration moving from the oil company either to itself or said minors, to said oil company of the S. W. ¼ of the S. W. ¼ of section 4, township 17, range 12 east. That said company thereupon took possession thereof and have since taken from said land about $100,000 in oil and gas. By reason of all of which plaintiff says it has been deprived of its property by fraud and the force and duress exercised and threatened by said Secretary, and was compelled to make said assignment to protect its own property against waste and irreparable injury.

The prayer, in effect, is that a resulting trust be decreed to exist in favor of plaintiff in that part of the lease assigned, and that the same be executed, and for an accounting of the rents and profits of the land, and for general relief.

As the allegations in the petition are insufficient to set up a resulting trust, the court did not err in sustaining a demurrer thereto. In order so to do the petition must disclose that the Secretary ordered assigned to defendant that part of the leased property in controversy as a result of an erroneous view of the law or through gross and fraudulent mistake of facts. *Acton v. Culbertson et al., post,* 132 Pac. 812; *Ross v. Stewart,* 25 Okla. 611, 106 Pac. 870.

Whether the approval of the Secretary of the Interior was necessary to the validity of the lease at the time the same was submitted to him for that purpose we will not say, as all

parties in interest have assumed that it was and the case went off on that theory. Assuming that it was, the petition fails to state facts sufficient to show that fraud was practiced on him, much less that he was misled thereby to plaintiff's injury. The fact that plaintiff had a lease pending for approval before the Secretary, and that he disapproved it as the result of a representation by Thompson Oil & Gas Company that it would give more for the lease than was offered by plaintiff, should it be given an opportunity to bid, and, as evidence of its ability and willingness so to do, placed a certified check in the hands of the Indian agent, whereupon the lease was disapproved, is by no means a fraud upon the rights of plaintiff. And this is true whether the party putting up the check had money to that amount in the bank certifying the same or not. This for the reason that the check represented and was equivalent to that much money.

In *Merchants' Bank v. State Bank,* 10 Wall. 647, 19 L. Ed. 1008, the court said:

"By the law merchant of this country the certificate of the bank that a check is good is equivalent to acceptance. It implies that the check is drawn upon sufficient funds in the hands of the drawee; that they have been set apart for its satisfaction; and that they shall be so applied whenever the check is presented for payment. It is an undertaking that the check is good then and shall continue good, and this agreement is as binding on the bank as its notes of circulation, a certificate of deposit payable to the order of the depositor, or any other obligation it can assume. The object of certifying a check, as regards both parties, is to enable the holder to use it as money. The transferee takes it with the same readiness and sense of security that he would take the notes of the bank. It is available also to him for all the purposes of money."

Far from being a fraud practiced by defendants on plaintiff or the Secretary, it might be likened to one buyer outbidding another at a public sale. When this action prompted the Secretary to disapprove the lease, it was then left in his discreton to set the same aside upon terms to be imposed by

him or upon such terms agreed upon between the parties as might meet his approval. Being of opinion, no doubt, that plaintiff was getting too much of the minor's property for its $5,000 bonus, and that it would be to their best interest to lease a part thereof to defendant, he in effect ratified the agreement of the attorneys for both sides by raising its royalty and imposing the condition contained in his letter, *supra,* setting aside his disapproval:

"That the Indiahoma Oil Company shall, as per its agreement, made by its attorneys, Lawrence & Gormly, assign to the Thompson Oil & Gas Company that portion of its lease which offsets the S. W. ¼ of the S. W. ¼ of section 4, township 17 north, range 12 east,"

—which was done. There was no fraud in this.

Judgment affirmed.

HAYES, C. J., and KANE and WILLIAMS, JJ., concur; DUNN, J., absent and not participating.