## FAST v. WALCOTT *et al.*

No. 2605., Opinion Filed September 10, 1913.

(134 Pac. 848.)

PUBLIC LANDS—Rulings of Town-Site Commission — Review by Courts. The town-site commissions of the Creek Nation were tribunals having exclusive original jurisdiction over the ascertainment of what lots were held under possessory claims and of who in each instance was the rightful claimant, and the action of such commissions, as between rival claimants, in granting the claim of one, resulting in the issuance of a patent, and rejecting the claim of the other, will not be inquired into in the courts unless it clearly appears that the commissioners committed some material error of law, or that misrepresentation and fraud were practiced upon them, or that they themselves were chargeable with fraudulent practices, and that as a result the patent was issued to the wrong party.

(Syllabus by the Court.)

*Error from District Court, Muskogee County;*
*John H. King, Judge.*

Action by Lulu Walcott and others against J. C. Fast. Judgment for plaintiffs, and defendant brings error. Reversed and remanded, with directions.

*N. A. Gibson, H. C. Thurman,* and *T. L. Gibson,* for plaintiff in error.

*Owen & Stone* and *Bailey & Wyand,* for defendants in error.

KANE, J.   This was a suit in equity commenced by the defendants in error, plaintiffs below, against the plaintiff in error, defendant below, for the purpose of declaring a resulting trust. Upon trial the court found that the plaintiff Walcott was the owner of the lots in controversy and that she was entitled to receive from the defendant a sufficient deed thereto. To reverse this decree this proceeding in error was commenced.

Fast v. Walcott et al.

The lots involved are situated in the city of Muskogee in the Creek Nation. It seems that the town-site commission of the town of Muskogee scheduled the lots to one Jane Doleman, to whom a patent was issued; that thereafter Jane Doleman conveyed the lots to J. C. Fast, the defendant. Whilst it appears that the plaintiff, Lulu Walcott, made application to the town-site board to have the lots scheduled to her, which application was denied for the reason that they had been scheduled to Jane Doleman, it does not appear that she ever filed a contest before the commission for the purpose of establishing her preference right or made any further effort to acquire title to the lots until she commenced this proceeding. The claim of Lulu Walcott is based upon prior settlement and improvements made by her mother, who transferred the lots to her at her marriage some time prior to the scheduling of the same to Jane Doleman. Lulu Walcott's own statement of the situation is probably as strong in her favor as the facts will justify. She testified:

"Q. When do you remember seeing that lot the first time? A. The first time in my life? Q. Yes. A. I was quite a small child. Q. Isn't it a fact that there was a road across that lot from the north to the south for a great many years before it was sold by you to Mr. Hirschman? A. Yes, sir; they commenced a trial there, and to get around the lot they tore the fence down. Q. Did you ever build any fence around it? A. No, sir; my mother has had the repairing done. Q. For a long time it is a fact that there was a road from the top of the hill to the bottom? A. Yes, sir. Q. Wasn't any house or any other improvements on it? A. No, sir. Q. You haven't any interest in it now, have you? A. Yes, sir; it belongs to me. Q. What did you give Mr. Hirschman this deed for? A. Because at the time I came to sell the lot I found that it was tied up, with the understanding that when I get the lot back I am to let him have the lot. Q. You have sold him all your interest in the lot? A. Yes, sir. Q. So you really don't own it at all? A. No, sir; I don't own it now; it belongs to Mr. Hirschman. Q. Did you ever go to the Muskogee town-site commission or to the Creek town-site commission to ask to have this lot scheduled

to you? A. I went to the town-site commission. Q. And asked to have this lot scheduled to you? A. Yes, sir; and they scheduled another lot to me instead. Q. You got that, did you? A. And at the time of the scheduling I told Mr. Marshall and Mr. Adams, and the other commissioner, that the lot they scheduled to me wasn't mine; that I owned lot 12 in block 242, and they said it was; that they had it surveyed, and these two lots, 3 and 4, were mine."

We do not believe that the petition states or the evidence discloses facts sufficient to entitle the plaintiff to the relief granted her by the court below. The evidence presented to this court for the first time would have been available before the town-site commission in a contest proceeding instituted before that tribunal by Lulu Walcott for the purpose of establishing her preference right to the lots, as against the claim of Jane Doleman.

In *Ross v. Stewart,* 25 Okla. 611, 106 Pac. 870, which involved certain town lots in a town in the Cherokee Nation, it was held:

"The town-site commission of the Cherokee Nation were tribunals having exclusive original jurisdiction over the contests between claimants to town lots in that part of the Indian Territory."

In the same case on appeal (227 U. S. 530,' 33 Sup. Ct. 345, 57 L. Ed. ——) the Supreme Court of the United States, speaking generally of the jurisdiction of such commission, says:

"The acts of 1898, 1900, and 1902 show very plainly that it was the purpose of Congress to commit to the commission the appraisal and disposal of all lots, whether occupied or vacant, improved or unimproved, save as its work was to be done under the supervision of the Secretary of the Interior. More than this, there was an express command that the commission should proceed 'in conformity with any then existing act of Congress, or agreement with the tribe, approved by Congress.' This meant that the commission should respect and give effect to the congressional legislation regulatory of the disposal and sale of the lots. The provisions according preference rights to possessory claimants and directing sales

at auction if those rights were not exercised within the prescribed period were a part of that legislation, and conformity to them necessarily involved an ascertainment of what lots were held under possessory claims and of who, in each instance, was the rightful claimant. True, there was no direct provision for such an ascertainment, but by necessary implication the duty of making it was cast upon the commission to whom the command for conformity was addressed. Plainly it was not contemplated that every claim of a preference right should be granted without inquiry into its merits, or that, as between conflicting claims seasonably presented, one should be granted and the other rejected without ascertaining which was the rightful one. The suggestion that such controversies were cognizable only in the courts finds no support in any statutory provision, is opposed to the plain implication of this legislation, and ignores the settled practice of Congress to commit such questions to the determination of administrative officers. As has been seen, the Secretary of the Interior, when issuing regulations for the guidance of the commission, took the view that it was to hear and determine such contests, subject to his supervisory authority; and in our opinion that was the correct view."

What is said above is equally as applicable to the townsite commissions for the Creek Nation. It is quite clear to us that by resort to a court of equity the plaintiff now attempts to do what she should have done before the town-site commission; that is, establish her preference right to the lots in controversy. This she is not permitted to do. It cannot be presumed that the town-site commission granted a preference right to Jane Doleman without inquiring into her rights in the premises. This being so, relief cannot be given in the courts from the decision of the town-site commission upon that question, which resulted in a patent being awarded to her, unless it clearly appears that the commissioners committed some material error of law, or that misrepresentations and fraud were practiced upon them, or that they themselves were chargeable with fraudulent practices and that as a result the patent was issued to the wrong party. *Ross v. Stewart, supra.* There is no contention that there was any misrepresentation

or fraud practiced upon the commissioners or that they themselves were chargeable with fraudulent practices, and as the petition does not attempt to set forth any of the proceedings before the town-site commission, or any of the facts, circumstances, or information which induced them to schedule the lot to Jane Doleman, we are unable to say that in doing so the commissioners committed any material error of law.

For the reasons stated, the judgment of the court below must be reversed, and the cause remanded, with directions to grant a new trial.

All the Justices concur.