# FORSTER v. INGRAM.

No. 9307—Opinion Filed Dec. 31, 1918.

Rehearing Denied Feb. 4, 1919.

(178 Pac. 99.)

1. **Public Lands—Patent—Avoidance of Decision of Land Department—Grounds.**

Where the officers of the Land Department are induced to issue a patent to the wrong party by an erroneous view of the law, or because of a gross or fraudulent mistake of facts the rightful claimant has a remedy, and may avoid the decision of the Land Department and charge the legal title of the patentee with his equitable right to it either upon the ground that, upon the facts found, conceded, or established witout dispute, at the final hearing before the department its officers fell into a clear error in the construction of the law applicable to the case, which caused them to issue the patent to the wrong party, or that, through fraud or gross mistake. they fell into a misapprehension of the facts proved before them, which had the like effect.

2. **Same—Suit to Cancel Patent—Presumption.**

In a suit to enforce such a remedy, however, all reasonable presumptions must be indulged in support of the officers intrusted by the law with the proceedings resulting in the patent.

3. **Same — Patent — Cancellation — Trust —Town Lots.**

Where a town-site commission appointed under section 15 of Act June 28, 1898, c. 517 30 Stat. L. 495, after a town lot has been appraised and scheduled to the owner of improvements thereon, causes the survey of the town site to be changed so as to remove the street away from said lot and to add a strip of land thereto, including the street as shown by the original survey, and this added strip of land is scheduled and patented to another claimant, the owner of the lot, as shown by the original survey, not contesting the issuance of patent thereof before the town-site commission or the Interior Department, has no such equitable ownership and title to such strip of land as will justify a trust in favor of the owner of the original lot and canceling the patent issued by the Land Department therefor.

(Syllabus by Galbraith, C.)

Error from District Court, Muskogee County: Chas. G. Watts, Judge.

Action by Emma T. Forster against Mary Ingram and others. Judgment for defendants, and plaintiff brings error. Affirmed.

N. B. Maxey, for plaintiff in error.

B. Broaddus, for defendants in error.

Opinion by GALBRAITH, C. This was an action to establish a trust in real estate. the property involved being a town lot or a portion of a town lot in the city of Muskogee. There is no controversy as to the facts; the case having been tried upon an agreed stipulation. The judgment of the trial court was for the defendants.

It appears from the stipulation that lot 3 in block 245, as shown by the original plat and survey of the city of Muskogee was scheduled to the plaintiff in error. Mary T. Forster; that said lot fronted on a street: that, after said lot had been appraised and two payments made upon the purchase price,

the town-site commissioners in charge of the city of Muskogee changed the survey of said city so as to move the location of the street passing by said lot 3, extending it some 50 feet farther west, and thereby adding a strip of land, including the street as shown by the original survey, to said lot 3; that this strip of ground so added to lot 3 was scheduled to Mary or Mollie Ingram; that a patent or deed was issued therefor to her under date of May 11, 1904; that the change in the survey and the relocation of the street passing in front of lot 3, block 245, operated to exclude said lot from direct access to the public street; that the patent or deed to Mary T. Forster for lot 3 in block 245, as shown by the original plat, bore date of October 15, 1904; and that the same was approved by the Secretary of the Interior, November 21, 1904. It appears from the stipulation that Mary T. Forster protested to the town-site commissioners, also to the city council, against the change of the survey and the relocation of the street as established by the original survey, but it does not appear that she contested the scheduling to Mary Ingram of the strip of land added to lot 3 by the change in the survey, or contested the right of Mary Ingram to a patent therefor before the townsite commissioners, as she might have done under the provisions of the statute governing the survey and disposal of the town-site. It does, however, appear that she filed a suit in equity in the United States Court for the Eastern District of the state of Oklahoma, after the patent had been issued to Mary Ingram, to cancel the same and to impress a trust upon the land conveyed to Mary Ingram and to have the same declared to be held for her benefit.

It is contended that section 15 of the act of June 28, 1898, c. 517, 30 Stat. L. 495, governed the survey and disposition of the town sites established in the eastern part of the state of Oklahoma. It is provided in section 15 of this act for a town-site commission for each town located in the Five Civilized Tribes to be composed of three members, one to be selected by the Executive of the Tribe in which the town is located, one by the Secretary of the Interior, and one by the town. Said section further provides:

"That said commissions shall cause to be surveyed and laid out town sites where towns with a present population of 200 or more are located, conforming to the existing survey so far as may be, with proper and necessary streets, alleys, and public grounds, including parks and cemeteries, giving to each town such territory as may be required for its present needs and reasonable prospective growth; and shall prepare correct plats thereof, and file one with the Secretary of the Interior, one with the clerk of the United States Court, one with the authorities of the tribe, and one with the town authorities. And all town lots shall be appraised by said commission at their true value, excluding improvements; and separate appraisments shall be effective until approved by the Secretary of the Interior, and in case of disagreement by the members of such commission as to the value of any lot, said Secretary may fix the value thereof."

Said section further provides:

"That the owner of improvements upon any town lot, other than fencing, tillage, or temporary buildings, may deposit in the United States Treasury, St. Louis, Missouri, one-half of such appraised value; ten per centum within two months and fifteen per centum more within six months after notice of appraisement, and the remainder in three equal annual installments thereafter, depositing with the Secretary of the Interior one receipt for each payment, and one with the authorities of the tribe, and such deposit shall be deemed a tender to the tribe of the purchase money for such lot."

This section further provides that in case "the owner of such improvements on any lot fails to make deposit of the purchase money as aforesaid, then such lot may be sold in the manner herein provided for the sale of unimproved lots," and also makes detailed provision for the sale of unimproved lots and unimproved property for public parks and cemeteries.

It is contended on behalf of the plaintiff in error, as follows:

"Now, there is no sensible or reasonable construction that can be given the part of section 15 above quoted than that it means that every lot laid off must be laid off with reference to some street, and that it must have a frontage on some street, and when the town-site commission moved the street farther back they should have added the old street and whatever additional land was taken to plaintiff's lot so as to give her a street on one side of her lot. They had no right under the law to list this strip to some one else and cut plaintiff off without any street."

And again:

"We contend that the plaintiff, being entitled to a street along the west side of her lot, was when the commission changed the street, entitled to all of the land between her lot as originally surveyed and the street. The commission did not make a new lot, but scheduled it as part of lot 3, block 245."

It is argued that Leak v. Joslin, 20 Okla. 200, 94 Pac. 518, is an authority supporting

these contentions, and justified the relief demanded by the plaintiff in error. With this contention we cannot agree. First, because the facts in the Joslin Case are entirely different from the facts in the instant case. In the instant case the plaintiff in error never had possession of the portion of the lot deeded to Mary Ingram, and never placed any improvements thereon. These facts distinguish the instant case from the Joslin Case, and are sufficient to justify the conclusion that the Joslin Case is not controlling in the decision herein. Counsel's contention may be stated briefly as follows: Where land is added to a lot within a town site by reason of the change of a street, the owner of the lot before such change becomes the equitable owner of the land so added. We know of no authority that will support that contention, and counsel has cited none.

This court in Johnson et al. v. Riddle, 41 Okla. 759, 139 Pac. 1143, announced the controlling doctrine on the question presented in the instant case, and quoted with approval from the opinion of the court in Alluwee Oil Co. v. Shufflin, 32 Okla. 808, 124 Pac. 15, where the rule is laid down as follows:

"If the officers of the Land Department are induced to issue a patent to the wrong party by an erroneous view of the law, or because of a gross or fraudulent mistake of the facts, the rightful claimant has a remedy, and may avoid the decision af the Land Department and charge the legal title of the patentee with his equitable right to it, either upon the ground 'that, upon the facts found, conceded, or established, without dispute, at the final hearing before the department, its officers fell into a clear error in the construction of the law applicable to the case, which caused them to issue the patent to the wrong party, or that, through fraud or gross mistake, they fell into a misapprehension of the facts proved before them, which had the like effect.' Garrett et al. v. Walcott. 25 Okla. 574, 106 Pac. 848; Baldwin v. Keith, 13 Okla. 624, 75 Pac. 1124; James v. Germania Iron Co., 107 Fed. 597, 46 C. C A. 476; Wallace v. Adams, 143 Fed. 716, 74 C. C. A. 540; Gonzales v. French, 164 U.S. 338, 17 Sup. Ct. 102, 41 L. Ed. 548."

Then the court said:

"It is no longer open to controversy that the town-site commissions in Indian Territory, acting under congressional authority, had power and jurisdiction to pass upon contests between conflicting claimants of the preference right to purchase town lots, and that, upon the abolition of the commissions, their power was transferred to the Indian Inspector. Ross v. Stewart, 227 U. S 530, 33 Sup. Ct. 345, 57 L. Ed. 626; Fast v. Walcott, 38 Okla. 715, 134 Pac. 848.

"In the case of Ross v. Stewart, supra, it is said by the Supreme Court of the United States: 'Relief will not be given in the courts from the decision of a town-site commission for a town in the Cherokee Nation in a contest arising on conflicting applications to purchase, or from the resulting patent, unless it clearly appears that the commissioners committed some material error of law, or that misrepresentation and fraud were practiced upon them, or that they themselves were chargeable with fraudulent practices, and that as a result the patent was issued to the wrong party.'

"And further it is said in the opinion that, in determining the matter, the test is: 'All reasonable presumptions must be indulged in support of the action of the officers to whom the law instrusted the proceedings resulting in the patent, and, unless it clearly appears that they committed some material error of law, * * * their action must stand.' "

Inasmuch as it appears from the facts stipulated that the plaintiff in error never had possession of the strip of ground in controversy and never placed any valuable improvements thereon, and never contested the right of Mary Ingram to a deed therefor before the town-site commission, it does not appear that the town-site commission committed any "material error of law" in ordering a patent issued therefor to Mary Ingram. That is, it does not appear that the town-site authorities entertained an erroneous view of the law, or that they were guilty of gross or fraudulent mistake of fact in ordering the patent issued in this instance.

It, therefore, appears that the judgment appealed from should be affirmed. It is so ordered.

By the Court: It is so ordered.